Tearle J. JARBOE, Appellant–Plaintiff,

v.

LANDMARK COMMUNITY NEWSPAPERS OF INDIANA, INC., and News Publishing Company, Inc., Barbara Friedman, Individually and in her capacity as General Manager of News Publishing Company, Inc., Appellees–Defendants.

No. 62A04–9212–CV–454.[1]

Court of Appeals of Indiana,
First District.

Dec. 21, 1993.

Rehearing Denied Jan. 28, 1994.

---

1. This case was diverted to this office on No- vember 5, 1993, by direction of the Chief Judge.

Michael C. Kendall, Kendall Law Office, Indianapolis, for appellant-plaintiff.

Richard A. Bierly, Barbara W. Gernert, Wyatt, Tarrant, Combs & Orbison, New Albany, for appellees-defendants.

BAKER, Judge.

Today we decide whether a person who has an oral employment contract unenforceable under Indiana's Statute of Frauds may pursue a wrongful discharge claim under the doctrine of promissory estoppel.

Appellant-plaintiff Tearle J. Jarboe (Jarboe) challenges the trial court's grant of summary judgment in favor of appellee-defendants Landmark Community Newspaper of Indiana and News Publishing Co. (collectively Landmark) in an action for unjust dismissal in breach of a one-year oral employment contract.[2]

## FACTS[3]

The facts most favorable to Jarboe are the Tell City News and Cannelton News

---

2. Jarboe is not appealing based on the other causes of action asserted in his original complaint. Also, Jarboe is not appealing any part of the judgment relevant to Barbara Friedman, who was general manager of Landmark when Jarboe took his 1988 medical leave. Thus, Friedman is not an appellee here.

3. As a preliminary matter, we admonish both parties for their failure to comply with several rules of appellate procedure. The most reprehensible act is the misstatements of the record by both parties. Additionally, both parties failed to include citations to the record and cite supporting authority for their arguments, *See* Ind.Appellate Rule 8.3(A)(7). The appellant

hired Jarboe as a full-time employee in the advertising composition department in November 1972. At that time, the general manager told Jarboe that he had a one-year employment contract, that he would be discharged for good cause only, that he would be reviewed every year, that if his performance was satisfactory he would have a secure job for another year, and that if his performance was unsatisfactory, he would be placed on probation for 30 to 60 days after which he would be retained or fired. Although the manager evaluated Jarboe on approximately an annual basis, the reviews were not performed on Jarboe's November anniversary or any other specified date. The time period for annual reviews ranged from eight to fourteen months. The parties never executed a written contract incorporating their oral agreement.

In 1977, Landmark Community Newspaper, the parent of the defendant Landmark, purchased the Tell City News and Cannelton News and renamed the paper The News. At this time, Landmark told Jarboe that the terms of his employment would remain the same. Landmark continued to evaluate Jarboe the same as before, on approximately an annual basis. Each year Jarboe received a favorable review. However, the parties never executed a written employment agreement.

In 1981 and in 1984, Jarboe requested leaves of absence from Landmark in order to have orthoscopic surgery on his knee. Each time, Jarboe told Landmark that he did not know how long he would be absent from work, yet Landmark granted each leave and told Jarboe that his job would await his return. Jarboe relied on Landmark's promises and had the surgeries. Jarboe returned to his same job after approximately five months of leave in 1981 and after approximately four months of leave in 1984.

On May 5, 1988, Jarboe's surgeon, Dr. James Heinrich, advised him that he needed a total knee replacement to relieve his pain caused by severe degenerative arthritis. Dr. Heinrich expected Jarboe would be unable to work for approximately three months.

The next day Jarboe relayed his surgeon's diagnosis to Landmark's general manager, Barbara Friedman. Friedman responded by telling Jarboe to take off work as long as he needed because his health was the most important thing and that when Jarboe returned to work he would be healthier and better able to perform his job. Friedman further assured Jarboe that he would be able to return to his same job whenever he was able to return to work.[4] Relying on Friedman's promises, Jarboe decided to have knee surgery on June 6, 1988, instead of waiting until he could build up more sick leave.

On July 28, 1988, while Jarboe was home recuperating, Friedman unexpectedly informed Jarboe that Landmark would keep his job open only until September 6, 1988, and that if he did not return by then he would be replaced.[5] Jarboe objected and reminded Friedman that she had promised to keep his job open until he was medically able to return to work. In the interim, Jarboe did everything possible to rehabilitate his knee hoping to return to work in September. However, on September 7, 1988, Dr. Heinrich advised Jarboe that he could not return to work for approximately three months. That same day Jarboe advised Friedman of his prognosis. Fried-

failed to include in his brief a verbatim statement of the trial court's judgment, *See* Ind.Appellate Rule 8.3(A)(4), and failed to make notations in the margins of each page of the transcript, *See* Ind.Appellate Rule 7.2(A)(3)(a). One of the parties failed to remove from the record post-it notes on which they had written comments.

**4.** At this meeting, Friedman inadvertently gave Jarboe the wrong paperwork to complete for his medical leave. Jarboe received the proper papers on June 3, 1988. Dr. Heinrich completed

the papers on June 17, 1988, by indicating that at that time he did not know when Jarboe could return to work and that it could possibly be three to six months from the date of surgery. This is the first time that either Jarboe or Landmark had any indication that Jarboe might not be able to return to work for six months.

**5.** Friedman later extended the date for Jarboe's return to September 7, 1988, because Dr. Heinrich was unable to re-evaluate Jarboe until then.

man responded by informing Jarboe that she would have to replace him.

Jarboe's last performance evaluation on September 8, 1987, was extremely favorable. Jarboe's next evaluation was scheduled for July 1988, but was never conducted since he was on medical leave until September when Landmark fired him. Dr. Heinrich did not medically release Jarboe to return to work until December 7, 1988.

On September 6, 1990, Jarboe filed a complaint against Landmark for damages resulting from his unjust dismissal in breach of his oral one-year contract of employment. On November 13, 1992, the trial court granted Landmark's motion for summary judgment.

## DISCUSSION AND DECISION

### I. Standard of Review

■ When reviewing the propriety of a grant of summary judgment we apply the same standard applicable to the trial court. Summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Rosi v. Business Corp.* (1992), Ind.App., 601 N.E.2d 408, 410; Ind.Trial Rule 56(C). In determining whether there is a genuine issue of material fact, we accept as true all facts alleged by the non-movant, consider the pleadings and evidence sanctioned by T.R. 56(C) and designated to the court (without determining weight or credibility), construe all evidence in favor of the nonmovant, and resolve all doubts as to the existence of a material issue against the movant. *Id.*

### II. Enforceable Oral Contract?

Jarboe first contends that the trial court erred in finding that his oral contract of employment was unenforceable under Indiana's Statute of Frauds. Specifically, Jarboe contends that the term of his last employment contract was from July 1988 to July 1989, and thus it could have been performed in less than 365 days. Therefore, he argues the Statute of Frauds is inapplicable and his oral contract is enforceable.

IND.CODE 32–2–1–1 provides:

No action shall be brought in any of the following cases: ....

Fifth. Upon any agreement that is not to be performed within one (1) year from the making thereof....

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized....

■ Under the Statute of Frauds, contracts which cannot be performed within one year must be in writing and signed by the party sought to be charged in order to be enforceable. *Mehling v. Dubois County Farm Bureau* (1992), Ind.App., 601 N.E.2d 5, 6. A contract of employment for exactly one calendar year is not within the Statute of Frauds. *Holcomb & Hoke Manufacturing Co. v. Younge* (1937), 103 Ind. App. 439, 8 N.E.2d 426. A contract of employment which is to extend beyond one year is within the Statute of Frauds. *Id.* Thus, a contract for one year and one day is within the Statute of Frauds. *Id.*

■ In the present case, Jarboe stated that the term of his oral employment contract with Landmark was from July 1988 to July 1989. However, he also stated that in July 1989 his employment contract would automatically be extended by a year if he received a satisfactory performance evaluation, or by thirty to sixty days if he received an unsatisfactory performance evaluation. Because Jarboe's employment contract was at least for one year and thirty days, it was within the Statute of Frauds and required a writing to be enforceable. The trial court did not err in finding that Jarboe's contract was unenforceable under the Statute of Frauds. Thus, Jarboe's claim would initially be barred under the Statute of Frauds.

### III. Promissory Estoppel

■ Jarboe also contends that even if his oral contract is unenforceable under the Statute of Frauds that Landmark is promissorily estopped from discharging him before his medical leave expired. Jarboe argues that Landmark should be estopped because Landmark promised he could take a leave of absence for as long as necessary, assured him that he could return to his job whenever medically able to do so, and that he detrimentally relied on these promises in deciding to proceed with his surgery.[6]

■ Oral promises which are unenforceable under the Statute of Frauds may nonetheless be enforceable under the doctrine of promissory estoppel. *Tincher v. Greencastle Federal Savings Bank* (1991), Ind.App., 580 N.E.2d 268, 272. A party may recover on a theory of promissory estoppel even in the absence of a contract. *First National Bank v. Logan Manufacturing Co.* (1991), Ind., 577 N.E.2d 949, 954 (adopting Restatement (Second) of Contracts § 90). An oral promise within the Statute of Frauds is enforceable under the doctrine of promissory estoppel if: (1) there is a promise by the promisor, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial nature on the part of the promisee, (3) which the promisee reasonably relies on and which does induce such action or forbearance, and (4) injustice can be avoided only by the enforcement of the promise. *Id.* The first three elements are questions of fact which guide the determination of the fourth element. *Eby v. York–Division, Borg Warner* (1983), Ind. App., 455 N.E.2d 623, 627. Application of the doctrine of promissory estoppel is appropriate in actions where a party takes certain action to his detriment in order to avail himself of promised employment. *Id.*

■ Applying the elements of promissory estoppel to the present case, the questions become: (1) whether Landmark's promise—that Jarboe could take a leave of absence for as long as necessary and return to his job whenever able to do so—alone induced Jarboe to proceed with his surgery in reasonable reliance thereon, (2) whether Jarboe's surgery was an action of a definite and substantial character, (3) whether Landmark reasonably expected (or should have reasonably expected) Jarboe would proceed with his surgery, and (4) whether injustice can only be avoided by enforcing Landmark's promise. Taking as true all the facts Jarboe brought forth as the nonmovant to Landmark's summary judgment motion, Jarboe has presented the three factual elements of an action based on promissory estoppel. Hence, we must reverse judgment for Landmark because genuine issues of fact material to Jarboe's promissory estoppel claim exist, precluding the granting of summary judgment.

### CONCLUSION

The trial court correctly found that Jarboe cannot recover on a breach of contract action because his oral contract for over one year is unenforceable under the Statute of Frauds. Nonetheless, the trial court improperly granted Landmark's motion for summary judgment, because Jarboe could possibly recover based upon the equitable doctrine of promissory estoppel. Genuine issues of fact material to Jarboe's promis-

---

**6.** Landmark contends that Jarboe waived this promissory estoppel argument because he did not assert it in his complaint and that the trial court decided only the issues raised in Jarboe's complaint. We disagree.

Ind. Trial Rule 8(E) provides: "No technical forms of pleading or motions are required." T.R. 8(F) further provides: "All pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points."

In his complaint, Jarboe alleged that Landmark unjustly dismissed him. In support of this claim, Jarboe alleged that Landmark had previously approved open-ended medical leaves of absences promising that he could return to his job when able to do so (which he did), that in this instance Landmark promised him a leave of absence for as long as necessary, assured him that he could return to his job whenever medically able to do so, he relied on these promises in deciding to proceed with his knee surgery, and that he suffered damages as a result of his unjust dismissal. These allegations are sufficient to establish a claim based on the doctrine of promissory estoppel.

sory estoppel claim preclude summary judgment.

Judgment reversed and remanded.

ROBERTSON and SHIELDS, JJ., concur.