Eugene G. ZIOBRON, Appellant–Plaintiff

v.

Shirley Palmer CRAWFORD, a/k/a, Shirley L. Palmer, Mary M. Brown, Louis Rosenberg, Timothy O'Connell, UAW Legal Services Plan (Chrysler), Jointly and Severally, Appellees–Defendants.

No. 49A05–9505–CV–162.

Court of Appeals of Indiana.

June 21, 1996.

Rehearing Denied Aug. 29, 1996.

Eugene G. Ziobron, Indianapolis, for Appellant.

Judith E. Seubert, Indianapolis, for Appellees.

## OPINION

ROBERTSON, Judge.

Attorney Eugene G. Ziobron appeals the dismissal of his complaint which alleged, among other claims, malicious prosecution, against Shirley L. Palmer and her attorneys, Mary M. Brown, Louis Rosenberg, Timothy O'Connell, and the UAW Legal Services Plan (Chrysler) [collectively referred to herein as UAW Legal Services]. The dispositive issue which requires that we reverse may be restated as:

whether Ziobron's complaint and the materials relied upon below sufficiently support a claim of malicious prosecution.[1]

## FACTS

The dispositive facts are largely undisputed. Although collection actions represent a very small percentage of Ziobron's legal practice, he represented Garage Doors, Inc. in an effort to collect a debt owed by Palmer. To this end, Ziobron sent Palmer a demand letter dated September 16, 1991, which read in pertinent part as follows:

> Re: Garage Doors of Indianapolis, Inc.
>
> Total Amt. Past Due Including Interest: $515.00

Dear Ms. Palmer:

> The above-referenced past due account has been forwarded to me for collection. This is to advise you that unless payment in full is received within ten (10) days from the date hereof, a suit to collect same will be commenced. If a lawsuit is initiated, interest and costs will be added to the sum past due, and attorney fees will be sought.
>
> Unless payment in full is made within the aforementioned time, I will assume that it is your desire for me to initiate legal proceedings. It is your decision as to what course of action is pursued.
>
> Thank you for your cooperation in this matter. Kindly direct all correspondence and payments to this office.

Palmer ultimately paid the debt in full.

It has never been alleged that Ziobron's letter was harassing, misleading, or abusive. Palmer has not claimed that she was harmed in any way by the letter, nor has she disputed that she owed the debt.

After the collection case was settled, Palmer, by UAW Legal Services, sued Ziobron in federal court under the Fair Debt Collection Protection Act [FDCPA], 15 U.S.C. § 1692. UAW Legal Services alleged that Ziobron's letter violated the Act by failing to include the debt collection warning required by 15 U.S.C. § 1692e(11) which reads:

---

1. We express no opinion regarding the viability of the other counts of Ziobron's complaint.

[T]his is an attempt to collect a debt. Any information obtained will be used for that purpose.

The complaint also alleged that the letter lacked the verification notice as required by 15 U.S.C. § 1692g. UAW Legal Services requested an award of actual damages, statutory damages of $1,000.00 per violation, costs and attorney's fees as provided by 15 U.S.C. § 1692k.

UAW Legal Services prosecuted the lawsuit against Ziobron for approximately one year during which Ziobron defended himself pro se. After partial discovery, the court determined that the dispositive issue in the litigation was whether Ziobron was a "debt collector" as that term had been defined and interpreted under the 15 U.S.C. § 1692a(6). Ziobron moved for summary judgment. Ultimately, UAW Legal Services voluntarily dismissed the lawsuit, apparently conceding that Ziobron was not a "debt collector" due to the limited nature of his collection practice.

Ziobron brought the present lawsuit for malicious prosecution among other claims. The trial court dismissed his complaint, and this appeal ensued. Additional facts are supplied as necessary.

## DECISION

■ The parties utilized materials outside the pleadings in arguing the motion to dismiss before the trial court. Accordingly, the present proceedings have been transformed into a motion for summary judgment by operation of Ind. Trial Rule 12(B)(8). *J.A.W. v. Roberts,* 627 N.E.2d 802, 806 n. 1 (Ind.Ct.App.1994). In such cases, our standard of review is well-settled. *Id.* at 807. We must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* In doing so, we stand in the shoes of the trial court and construe all evidence properly designated by the parties in favor of the nonmoving party. *Id.* Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise from the undisputed facts. *Id.*

## I.

### *Record on Appeal*

■ UAW Legal Services first asserts that Ziobron's appeal should be dismissed because he did not submit the entire record generated below to this court on appeal. The appellate rules require an appellant to transmit only those parts of the record that are necessary for review of the issues raised on appeal. *In re the Visitation of Walker,* 665 N.E.2d 586, 588 (Ind.1996). In *Walker,* our supreme court, recognizing that reproducing the entire record for appeal can be wasteful and expensive, expressly encouraged litigants to utilize, and reviewing courts to permit the utilization of, procedures that minimize the expense and administrative burdens for the parties and the court system. *Id.* at 588. The *Walker* court reviewed a case tried on the merits where only the proposed findings of fact and the trial court's findings, conclusions, order, and judgment were included in the record on appeal. *Id.* at 587–88, 589.

The record submitted by Ziobron included the pleadings, UAW Legal Service's motion to dismiss, and the various memoranda submitted to the trial court for its ruling. As will hopefully be obvious from our discussion below, our review of this case is largely, if not completely, resolved by examination of the undisputed facts alleged in the pleadings. As the record provided by Ziobron is more than sufficient for us to conduct a meaningful review, we find no error.

## II.

### *Federal Preemption*

■ UAW Legal Services asserts that the FDCPA preempts Ziobron's malicious prosecution claim noting that the Act provides a remedy for defendants wronged in prosecutions brought under the Act in 15 U.S.C. § 1692k(a)(3) which provides:

On a finding by the Court that an action under this Section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, state law which conflicts with federal law is without effect. *Wilson v. Pleasant*, 660 N.E.2d 327, 329 (Ind.1995). The intent of Congress to preempt state law may be expressed in the statute's language or implied in the statute's structure and purpose. *Id.* If the preemption question is not settled by a precise and narrow application of the statute's language, we must determine whether the state law in question actually conflicts with federal law. *Id.* at 334. State law actually conflicts with federal law where it is impossible for a citizen to comply with both state and federal requirements or if state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* In *Wilson,* our supreme court held that a plaintiff's common law product liability claim against an automobile manufacturer for the failure to install an airbag was not preempted by federal law despite the detailed safety regulations imposed upon auto manufacturers by the Federal National Traffic and Motor Vehicle Safety Act of 1966. *Id.* at 339.

In enacting the FDCPA, Congress stated its findings and declared the purposes of the Act as follows:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692. The FDCPA addresses preemption as follows:

**Relation to State laws**

This subchapter does not annul, alter or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n. The FDCPA has been held to preempt state law where the state has not addressed objectionable debt collection practices with legislation which is either parallel to, or more severe than, the FDCPA. *Johnson v. Statewide Collections, Inc.,* 778 P.2d 93, 99 (Wyo.1989).

The Act's preemption clause, 15 U.S.C. § 1692n, does not purport to preempt state law malicious prosecution claims. Instead, it is specifically addressed to the "laws of any State with respect to debt collection practices" and provides that state laws are not preempted by the FDCPA "if the protection such [laws afford] any consumer is greater than the protection provided by [the Act]." As is clear from the expressed purpose of the Act and the language of the Act's preemption clause, the FDCPA is designed to protect consumers from objectionable debt collection practices. The provision relied on by UAW Legal Services, 15 U.S.C. § 1692k(a)(3), which provides a remedy for persons harmed by bad faith litigation brought under the Act, is merely collateral to the intent and purposes of the Act. It is certainly not impossible or unreasonable to

expect persons (especially attorneys) who bring actions under the FDCPA to comply with both federal and state law requirements prohibiting bad faith litigation or malicious prosecution.

Moreover, state law claims of malicious prosecution against attorneys who abuse the remedies afforded by the FDCPA do not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. In fact, abuse of the Act's remedies defeats the purposes of Congress. As noted by Judge Suhrheninrich in his dissenting opinion in *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992):

> the facts clearly reveal that even if there were a technical violation of the [FDCPA], the case should never have been brought. [The debtor] does not dispute the debt that [the creditor] is seeking to collect, does not assert that the letter was harassing, misleading, or abusive, and does not claim to have been harmed in any way by the letter. Moreover, at oral argument, [the debtor's] attorney was unable to articulate any damage to [the debtor] as a result of the violation. The only injury which flows from the alleged violation here is the waste of valuable, finite judicial resources. The pointless exercise of such litigation may also have a damaging secondary effect on debtors. In order to avoid technical non-compliance with statutory requirements, creditors may well decide to withhold necessary informative communication.

970 F.2d at 1522.

Based on the above, we cannot conclude that Congress intended to preempt a state law claim seeking compensation for a malicious prosecution under the FDCPA. If anything, the availability of the state law remedy will serve to protect the integrity and purposes of the Act. Therefore, we hold that Ziobron's malicious prosecution claim is not preempted by federal law.

## III.

### *Pro Se Attorney's Fees*

■ UAW Legal Services asserts that the only damages that Ziobron claims is an award of attorney fees for defending himself pro se against the action brought under the FDCPA. UAW Legal Services cites *Kay v. Ehrler*, 499 U.S. 432, 435–38, 111 S.Ct. 1435, 1436–38, 113 L.Ed.2d 486, for the proposition that a pro se litigant, including an attorney, may not recover an award of attorney's fees. Our supreme court recently followed *Kay* in *Miller v. West Lafayette Community School Corporation*, 665 N.E.2d 905 (Ind.1996).

However, the *Kay* and *Miller* decisions are inapposite to the case at bar as both cases involved the question of whether a pro se litigant/attorney could recover an award of attorney's fees under a fee shifting statute. *Kay* involved a claim for attorney's fees authorized by the federal Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1988). *Miller* involved a claim for attorney's fees authorized under the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e)(4)(B) (1990). The *Miller* court noted that the two fee shifting statutes were similar and quoted *Kay* as follows:

> 'Although [the fee-shifting section] was no doubt intended to encourage litigation protecting civil rights, it is also true that its more specific purpose was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights.
>
> In the end ... the overriding statutory concern is the interest in obtaining independent counsel for victims of civil rights violations .... we think Congress was interested in ensuring the effective prosecution of meritorious claims.
>
> \* \* \* \* \* \*
>
> A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every case.'

*Miller*, 665 N.E.2d at 906–07; *Kay*, 499 U.S. at 436–38, 111 S.Ct. at 1427–38. The present case is distinguishable from *Kay* and *Miller*

in that the attorney's fees that Ziobron requests are not authorized by a fee-shifting statute designed to ensure that plaintiffs obtain the assistance of competent counsel in the effective prosecution of meritorious claims, but instead, represent the damages Ziobron has allegedly suffered as the victim of a tort.

Although we are not aware of any Indiana authority on this subject, the majority rule permits an attorney representing himself to recover an award of attorney's fees for his time and effort in defending a frivolous lawsuit. *Friedman v. Backman*, 453 So.2d 938 (Fla.App.1984); *Quick & Reilly, Inc. v. Perlin*, 411 So.2d 978 (Fla.App.1982)[2]. The rationale of this rule is, "as the saying goes, 'a lawyer's time and advice are his stock in trade.'" *Friedman*, 453 So.2d at 938.

 We agree with this rationale and hold that an attorney may recover compensation for the time and effort spent in defending against a malicious prosecution as an element of his damages. To hold otherwise would be analogous to prohibiting an auto body repairman, who had repaired his own car, from recovering reasonable compensation from the vandal who had damaged the car. Therefore, the present litigation is not appropriately terminated on the basis that Ziobron's primary claim for compensation is an award of attorney's fees representing the time and effort he expended in defending against the alleged malicious prosecution.

## IV.

### Malicious Prosecution

 UAW Legal Services argues that Ziobron has failed to establish the essential elements of his claim for malicious prosecution. The elements of this tort are 1) the defendant instituted a prosecution against the plaintiff; 2) the defendant acted maliciously in doing so; 3) the prosecution was instituted without probable cause; and 4) the prosecution terminated in the plaintiff's fa-

vor. *Mirka v. Fairfield of America, Inc.*, 627 N.E.2d 449, 451 (Ind.Ct.App.1994), *trans. denied.* Specifically, UAW Legal Services attacks the middle two elements, malice and lack of probable cause.

 The essence of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. *Board of Commissioners of Hendricks County v. King*, 481 N.E.2d 1327, 1329 (Ind.Ct. App.1985). The crux of attorney liability for malicious prosecution is premised upon a finding that the attorney acted for some purpose other than aiding his client in securing a proper adjudication of his claim. *Wong v. Tabor*, 422 N.E.2d 1279, 1287 (Ind.Ct.App. 1981). This 'propriety of purpose' analysis relates to both the elements of malice and probable cause. *Id.* The issue turns on an objective analysis of whether a competent and reasonable attorney would consider the claim worthy of litigation. *Id.* at 1288. Malice may be inferred from a total lack of probable cause. *Board of Commissioners of Hendricks County v. King*, 481 N.E.2d at 1329.

Again, we are guided by Judge Suhrheinrich's dissenting opinion in *Frey v. Gangwish*, 970 F.2d at 1521. Immediately after noting that the creditor's letter was not harassing, misleading, or abusive and the debtor could not have been harmed in any way by the alleged technical violation of the FDCPA, as set out above, the learned jurist noted:

> The suspicion raised in my mind is whether the UAW Legal Services Plan, of whom this statute seems to be a favorite, [The footnote inserted at this point states that the court's electronic search revealed 38 cases filed by various UAW Legal Services offices under the Act as of March 28, 1988.] is more interested in the mandatory statutory award of attorney's fees than they are in protecting the rights of debtors against dishonest debt collectors. Were I the district judge in this matter, I would contemplate imposing Rule 11 sanctions.

**2.** The *Quick* court noted that "we align ourselves with a narrow majority of jurisdictions which have passed on the issue," citing cases from five states which permit an attorney representing himself to recover an award of attorney fees and

cases from four states which do not permit such an award. 411 So.2d at 980. The *Quick* court cited Annot., 78 A.L.R.3d 1119 (1977), an annotation on the subject. *Id.*

Since I am not, I can only advise that on remand, the district judge remain cognizant of the absence of damages and of the true tenor of the longstanding relationship between these parties when statutory damages are sought. Finally, I caution the UAW Legal Services Plan to choose battles worth fighting.

970 F.2d at 1522 (Citations omitted).

■ As noted above, the FDCPA was designed to protect the rights of debtors against abusive debt collection practices. It goes without saying that the Act was not intended to provide opportunistic attorneys with an easy buck for prosecuting technical violations of the Act which has in no way harmed debtors. We agree with Judge Suhrheinrich that it is inappropriate to bring an action for a technical violation of the Act for the purpose of obtaining the mandatory award of attorney's fees as provided under the Act.

In the present case, as noted above, there has never been any allegation that Ziobron's demand letter to Palmer was harassing, misleading, or abusive. UAW Legal Services alleged only that Ziobron's letter may have failed to comply with some of the technical requirements of the FDCPA had Ziobron been subject to the Act. Thus, Ziobron's complaint sufficiently alleges, and is sufficiently supported with designated materials, that UAW Legal Services brought suit against him under the FDCPA for an improper purpose, one other than aiding a debtor against unscrupulous debt collection practices. Accordingly, Ziobron's claim of malicious prosecution survives summary disposition and we reverse and remand for trial.

Judgment reversed.

BAKER and BARTEAU, JJ., concur.