William H. TOBIN, Appellant–Plaintiff,

v.

Saul I. RUMAN and Ruman Clements & Holub, P.C. f/k/a Ruman Clements Tobin & Holub, P.C. f/k/a Ruman Clements & Tobin, P.C., Appellees–Defendants.

No. 45A04–0403–CV–171.

Court of Appeals of Indiana.

Dec. 9, 2004.

Rehearing Denied Feb. 16, 2005.

William H. Tobin, South Holland, IL, Appellant Pro Se.

David C. Jensen, John P. Twohy, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant/Cross–Appellee William H. Tobin appeals the trial court's grant of Appellees/Cross–Appellants Saul I. Ruman's (Ruman) and Ruman, Clements & Holub, PC's ("RCH")[1] motion for summary judgment on Counts VI and VII of his amended complaint, where he sought damages for breach of oral contract and fraud. Specifically, Tobin contends that the trial court erred by: (1) holding that the Statute of Frauds applies to an oral employment contract of uncertain duration, barring its enforcement; and (2) granting summary judgment on his fraud claim where the Statute of Frauds does not operate as a bar and where the fraud claim is independent of his other theories of recovery.[2]

---

1. The law firm has changed its name at least three times as attorneys have left. For the sake of consistency, we will refer to it as "RCH" throughout.

2. Tobin's briefs are filled with unnecessarily hostile descriptions of the opposing parties and the trial court, proclaiming that: "Ruman's credibility is in tatters," Appellant's Br. p. 13, "the trial court did not listen but rather ruled immediately, one might say precipitously," id. p. 19, Ruman and RCH "harp on [an] utterly immaterial fact," Reply Br. p. 12, Ruman and RCH make a "ridiculous conten-

tion," id. p. 13 n. 4, Ruman "flatly impeached himself," id. p. 14, the trial court "was beguiled by defendants' bogus insistence," id. p. 15, Ruman and RCH "prefer to stick with their own hallucinatory spin," id. p. 16, Ruman and RCH tried "to blow smoke past the trial court magistrate ... [and] it is both reprehensible and foolish to attempt such transparent chicanery in this Court of Appeals," id. p. 17, Ruman and RCH included "hysterical sputtering" in their brief, id., Ruman and RCH make "absurd arguments," id. p. 19 n. 8, and Ruman's and RCH's "only

Ruman and RCH cross-appeal the trial court's grant of Tobin's motion for summary judgment on Counts II and III of his amended complaint, where he sought damages for violation of the Wage Payment Act and breach of contract. Specifically, Ruman and RCH contend that the trial court erred by: (1) holding that Count II sought money that constitutes "wages" under the Wage Payment Statute, qualifying Tobin for treble damages and attorney fees; (2) holding that Count III stated a claim for criminal conversion where Tobin did not plead conversion in his complaint and where Tobin was merely seeking payment of a debt; and (3) awarding Tobin attorney fees where he is a pro se plaintiff.

We conclude that the trial court: (1) improperly granted Ruman's and RCH's motion for summary judgment on Count VI; (2) properly granted Ruman's and RCH's motion for summary judgment on Count VII; and (3) properly granted Tobin's motion for summary judgment on Counts II and III, but based its rulings in part on improper grounds, resulting in improperly calculated damages. We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

In 1981, Tobin began working for Ruman as an associate attorney in a law firm solely owned by Ruman. In January 1989, Ruman, Tobin, and three other attorneys formed a professional corporation, with Ruman owning a ninety-six percent equity interest in the new corporation. The other attorneys each took a one percent equity interest. Each of the one percent equity owners contributed $5,000 to RCH as part of the purchase price of his one share of stock. Additionally, in 1988, the firm allocated a $10,000 bonus for each of them as an additional contribution to RCH's capital.

At some point prior to incorporation, all five shareholders entered into an undated Agreement, which provided that any of the four one percent owners "may require Ruman to pay back his share of stock for the price paid at any time, plus interest." Cross–Appellee's Second App. p. 102. Additionally, Ruman allegedly assured the four other equity owners that they would all be compensated equally on an annual basis. Tobin was an at-will employee, subject to termination by either party at any time.

At the end of each calendar year, RCH issued IRS Form K–1 to its shareholders, reporting miscellaneous items of corporate income, credits, and deductions. These items were allocated and shown as distributed to the shareholders individually, to be reported on their individual tax returns. The shareholders paid annual income taxes on the K–1 allocations although they did not receive a distribution of those amounts from RCH. The accumulated total of all

guiding principle seems to be mere expediency in minimizing their damages," *id.* p. 23. These are but a few typical examples of the language Tobin included in his briefs. The generally offensive and inflammatory tone of the briefs does little to advance Tobin's position, and we note that " '[f]or the use of impertinent, intemperate, scandalous, or vituperative language in briefs on appeal impugning or disparaging this court, the trial court, or opposing counsel, we have the plenary power to order a brief stricken from our files and to affirm the trial court without further ado.' " *Wright v. State*, 772 N.E.2d 449, 453 n. 1 (Ind.Ct.App.2002) (quoting *Clark v. Clark*, 578 N.E.2d 747, 748 (Ind.Ct.App.1991)). In the interest of evaluating Tobin's issues on appeal, we choose not to strike his briefs or any portion thereof. We caution Tobin, however, to adopt a more professional, appropriate, and respectful tone in all of his dealings with courts of law and other members of the legal profession in the future or face appropriate sanctions. *See id.*

annual K–1 net amounts constitutes RCH's retained earnings, and there is a dispute as to whether each shareholder's pro rata share is separately calculated and accounted for or whether all shareholders' shares are commingled in a single account. Regardless, RCH acknowledges that the retained earnings belong to the shareholder to whom they were shown as distributed. Tobin's share of RCH's retained earnings totals $5,301.

On January 8, 2001, Tobin tendered his resignation and requested that RCH buy out Tobin's equity interest in the firm. After months of allegedly refusing Tobin's requests for documentation and information on how to value and redeem his equity interest in the firm, on June 29, 2001, Ruman tendered a check payable to Tobin in the amount of $10,000 for the "repurchase of stock in full and final settlement of any and all claims...." Cross–Appellee's Second App. p. 63. Tobin refused and returned the check. To date, RCH has neither repurchased Tobin's stock nor paid him his share of the retained earnings, but it has made at least two Offers of Judgment to Tobin for: (1) $15,000 plus interest pursuant to Count II; and (2) $5,301 pursuant to Count III. Appellees' Supp.App. p. 2–3. Tobin refused both Offers of Judgment. *Id.*

On August 6, 2001, Tobin filed a four-count complaint alleging, inter alia, breach of contract and fraud. Ruman and RCH moved for summary judgment on October 10, 2001. On March 22, 2002, Tobin amended his complaint to include six counts, which are summarized as follows:

Count I: Violation of Indiana Shareholder Statutes.

Damages: one percent equity interest plus interest.

Count II: Breach of Contract; Violation of Wage Payment Statute.

Damages: $60,000 plus interest, attorney fees, and litigation expenses.

Count III: Failure to Pay Share of Retained Earnings; Breach of Contract.

Damages: $10,000 plus interest and costs.

Count IV: Unjust Enrichment.

Damages: share of retained earnings plus interest and costs.

Count V: Breach of Shareholder Duties.

Damages: compensatory and punitive damages, costs of litigation.

Count VI: Breach of Oral Contract.

Damages: $225,000 plus interest, attorney fees, and litigation expenses.

Count VII: Fraud.

Damages: compensatory and punitive damages, costs of litigation.

Appellant's App. p. 98–110. Also on March 22, 2002, the trial court held oral argument on Ruman's and RCH's motion for summary judgment, which was admittedly moot as to the first five counts of Tobin's complaint due to the amendment. The trial court granted the motion for summary judgment as to Counts VI and VII.

On July 10, 2003, Tobin moved for partial summary judgment on Counts II and III of his amended complaint. Following oral argument on October 1, 2003, the trial court granted plaintiff's motion on January 5, 2004. Tobin now appeals the 2002 summary judgment against him and Ruman and RCH now appeal the 2004 summary judgment against them.

## DISCUSSION AND DECISION
### I. Standard of Review [3]

When reviewing a summary judgment ruling, this court stands in the shoes

3. Tobin notes in his opening brief that the "standards for deciding motions for summary

of the trial court, and does not weigh the evidence, but merely construes the pleadings and designated materials in a light most favorable to the non-movant. *Becker v. Four Points Inv. Corp.*, 708 N.E.2d 29, 30 (Ind.Ct.App.1999), *trans. denied.* Summary judgment is appropriate when the pleadings, affidavits, testimony, and products of discovery demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Tr. R. 56(C). A factual issue is genuine if it cannot be foreclosed by reference to undisputed facts. *Jones v. City of Logansport*, 436 N.E.2d 1138, 1143 (Ind.Ct.App.1982). A fact is material if it affects the outcome of the litigation. *Costello v. Mut. Hosp. Ins. Inc.*, 441 N.E.2d 506, 508 (Ind.Ct.App. 1982), *trans. denied.*

## II. 2002 Summary Judgment

Tobin argues that the trial court erred in granting Ruman's and RCH's motion for summary judgment on Counts VI and VII of his amended complaint. Although the trial court did not articulate its reasons for granting summary judgment, Ruman and RCH contended in their briefs and at the summary judgment hearing that both counts are barred by the Statute of Frauds. Specifically, they argue that the oral employment agreement, although at-will, remained in place for over twelve years and, therefore, falls within the Statute of Frauds. In addition, they argue that Tobin bases his fraud count on the breach of an oral agreement, pointing to

authority holding that a litigant may not base a fraud claim on an oral agreement that is within the Statute of Frauds.

### A. Count VI

■ In Count VI of his amended complaint, Tobin argues that Ruman and RCH breached his oral employment contract.[4] In particular, he contends that before the incorporation of RCH, Ruman assured Tobin and the other shareholders that all of the one percent equity owners would be compensated equally. Tobin now alleges that in fact, RCH paid him less than it paid the other three one percent shareholders, and that RCH is therefore in breach of the oral agreement. RCH contends that the oral agreement is within the Statute of Frauds, although RCH admits that Tobin was an at-will employee and that the contract was not to last for any specific duration of time.

■ The Statute of Frauds provides that "contracts which cannot be performed within one year must be in writing and signed by the party to be charged...." *Mehling v. Dubois County Farm Bureau Coop. Ass'n, Inc.*, 601 N.E.2d 5, 7 (Ind.Ct. App.1992); *see also* Ind.Code § 32–21–1–1. This court recently reaffirmed the long-standing rule in Indiana as to when an oral contract falls within the Statute of Frauds:

'It must affirmatively appear by the terms of the contract, that its stipulations are not to be performed within a year after it is made, in order to bring it within the provisions of the statute of frauds. [sic] The Statute of Frauds has

---

judgment constitute such a familiar litany that they need no restatement here." Appellant's Br. p. 9. We direct him to Indiana Appellate Rule 46(A)(8)(b), which requires the appellant to include a description of the applicable standard of review. Although Tobin is pro se, he is also an attorney who is licensed in Indiana and Illinois. We caution him to pay closer heed to the rules in the future.

4. Tobin has not alleged that Ruman's and RCH's alleged breach of contract and failure to pay him wages that are equal to the other associate attorneys' wages violates the Wage Payment Act.

always been held to apply only to contracts which, by the express stipulations of the parties, were not to be performed within a year, and not to those which might or might not upon a contingency, be performed within a year. The one year clause of the Statute of Frauds has no application to contracts which are capable of being performed within one year of the making thereof.'
Wallem v. CLS Indus., Inc., 725 N.E.2d 880, 886–87 (Ind.Ct.App.2000) (quoting Silkey v. Investors Diversified Servs., Inc., 690 N.E.2d 329, 334 (Ind.Ct.App.1997), trans. denied ). In construing the above, it is apparent that only if it is impossible for an oral contract to be completed within one year does it fall within the Statute of Frauds.

Ruman and RCH cite to a number of cases holding that the Statute of Frauds barred the enforcement of an oral agreement where the agreement was silent as to duration. But those cases are factually distinguishable from this one. In Wior v. Anchor Indus., Inc., our supreme court declined to enforce an oral contract for "permanent employment" that both parties anticipated would last at least twenty years. 669 N.E.2d 172, 174–75 (Ind.1996). In Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., both parties acknowledged that the oral employment contract at issue was intended to last at least thirteen months. 625 N.E.2d 1291, 1294 (Ind.Ct. App.1993), vacated in part on other grounds. In Mehling, it was the parties' understanding that the contract at issue was to extend beyond one year. 601

N.E.2d at 7–8. In ITT Cannon Elec., Inc. v. Brady, the oral contract at issue was alleged to extend for at least eighteen months. 141 Ind.App. 506, 230 N.E.2d 114, 115 (1967). Finally, in Montgomery Ward & Co., Inc. v. Guignet, the oral contract was for "permanent employment" and was intended to last more than five years. 112 Ind.App. 661, 45 N.E.2d 337, 341 (1942). In all of these cases, the parties understood at the time of contracting that the employment would last for a period longer than one year.

In this case, on the other hand, our review of the record reveals no credible evidence that either Tobin or RCH anticipated that his employment would necessarily last for a period longer than one year.[5] To the contrary, he was an at-will employee who could have tendered his resignation or been fired at any time. It is of no moment that he was actually employed there for twelve years, for as Tobin correctly points out, the Statute of Frauds speaks prospectively—from the standpoint of the parties' intentions at the time of contracting—rather than retrospectively— examining the contractual duration with 20/20 hindsight. This oral contract does not fall within the Statute of Frauds, and the trial court improperly granted summary judgment on that basis.

### B. Count VII

In Count VII of his amended complaint, Tobin alleges that Ruman committed fraud by repeatedly representing to him during his time of employment that his compensation was and had always been

---

5. Ruman submitted an affidavit in which he asserts that Tobin was "employed for a period to exceed one year...." Appellant's App. p. 68. This assertion seems to conflict with a 2001 letter to Tobin in which Ruman acknowledges that Tobin was an employee at-will and with RCH's admission in its brief that Tobin was an at-will employee. Id. p. 88;

Appellees' Br. p. 10. We must construe all of the pleadings in a light most favorable to Tobin, the non-movant. Moreover, at the least, this affidavit demonstrates that there is a genuine issue of material fact, rendering summary judgment inappropriate on that basis alone.

the same as that paid to the other equity attorneys, that Tobin relied on these representations by remaining in RCH's employ, that the representations were false, and that Tobin was damaged as a result. Ruman and RCH counter by arguing that the fraud claim merely "repackages" the breach of oral contract claim, pointing to authority that a litigant may not premise a fraud claim on an oral agreement that is within the Statute of Frauds. Appellees' Br. p. 16.

 A breach of contract claim may not lead to an award of punitive damages. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind.1993). Rather, only if the claimant proves that the conduct of the breaching party independently establishes the elements of a common law tort for which punitive damages are allowed may the claimant receive punitive damages. *Id.* at 981. Thus, a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach. *Id.*; *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind.Ct.App.2000). While "[b]reaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent," the claimant must nonetheless prove the independent tort to recover punitive damages. *Epperly*, 734 N.E.2d at 1073.

 Actual fraud exists when all of the following elements are fulfilled: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment. *Abbott v. Bates*, 670 N.E.2d 916, 923 n. 4 (Ind.Ct. App.1996). A litigant may not premise a fraud claim on an oral agreement that is itself within the Statute of Frauds. *Kavanaugh v. England*, 232 Ind. 54, 110 N.E.2d 329, 330 (1953).

In this case, our review of the designated evidence reveals that Tobin's fraud claim is, in fact, merely a repackaged version of his breach of contract claim. As in *Miller*, the allegations making up his fraud claim amount to a series of misrepresentations stemming from and about the contract itself. 608 N.E.2d at 984–85. At best, such evidence merely establishes that Ruman and RCH breached the oral contract by failing to compensate Tobin equally with the other associate attorneys and then lied to him about that failure. *See id.* ("[a]t best, such evidence establishes that Miller wrongfully terminated the contract"). While Tobin may believe that Ruman's and RCH's breach was fraudulent, he has offered no evidence establishing that their actions constitute the separate and independent tort of fraud. As such, Tobin's fraud claim fails as a matter of law and the trial court properly granted summary judgment on this count.

### III. *2004 Summary Judgment*

Ruman and RCH argue that the trial court improperly granted Tobin's motion for summary judgment on Counts II and III of his amended complaint. Although the trial court did not articulate its reasons for granting summary judgment, Tobin argued in his briefs and at the summary judgment hearing that: (1) he should be awarded the full amount of his equity interest plus treble damages and attorney fees because Ruman and RCH breached a written agreement and ran afoul of the Wage Payment Act; (2) he should be awarded the full amount of his share of the retained earnings of RCH plus treble damages and attorney fees either because Ruman and RCH breached a written agreement or because they committed criminal

conversion; and (3) he should be awarded attorney fees even though he is pro se pursuant to relevant statutory language, case law, and public policy concerns. .

### A. Count II

In Count II of his amended complaint, Tobin alleges that RCH failed to redeem Tobin's $15,000 equity interest in the firm—comprised of a $5,000 personal check from Tobin and a $10,000 bonus allocated to RCH's capital under Tobin's name—thereby breaching their written agreement and running afoul of the Wage Payment Act. The trial court granted Tobin's motion as to this count, awarding him $89,865, which includes treble damages and attorney fees. RCH is willing to pay $15,000 plus interest, Appellee's Supp.App. p. 256, but contends that the trial court erred in finding the $10,000 allocated bonus to be a "wage" under the Wage Payment Act, thereby qualifying the award for treble damages and attorney fees.

A court must interpret a contract to ascertain the intent of the parties at the time of contracting. *McLinden v. Coco*, 765 N.E.2d 606, 611 (Ind.Ct.App.2002). If the contract language is clear and unambiguous, the terms are conclusive. *Ogle v. Ogle*, 769 N.E.2d 644, 647 (Ind.Ct.App. 2002), *trans. denied.*

In this case, the written shareholders agreement provides that "any of the Associates may require Ruman to buy back his share of stock for the price paid at any time, plus interest." Cross-Appellee's Second App. p. 102. The agreement clearly and unambiguously requires that upon a request from Tobin, who was an associate, Ruman was required to buy back Tobin's share of stock plus interest. Tobin paid $15,000 for his share of stock. Therefore, Ruman breached their agreement by ten-

dering Tobin a check for $10,000 instead of $15,000 plus interest for Tobin's share of stock. Inasmuch as Tobin refused to accept that tender of payment, Ruman must—at the least—now pay Tobin $15,000 plus interest. Indeed, Ruman and RCH made at least one Offer of Judgment to Tobin for $15,000 plus interest, which Tobin refused.[6] Appellees' Supp.App. p. 2–3.

Tobin argues, and the trial court agreed, that in addition to being liable for $15,000 plus interest under a breach of contract theory, RCH is also liable for treble damages and attorney fees pursuant to the Wage Payment Act. Specifically, Tobin contends that the $10,000 bonus that RCH allocated to Tobin's equity investment was a "wage" under the statute, qualifying it for treble damages and attorney fees.

The Wage Payment Act provides that "every person ... doing business in Indiana, shall pay each employee at least semi-monthly or bi-weekly ... the amount due the employee." Ind.Code § 22–2–5–1(a). The statute defines "the amount due each employee" as "wages." I.C. § 22–2–5–2. While the statute does not define "wages," we have concluded in the past that "wages" are compensation paid on a regular basis for work performed by the employee on an ongoing basis. *Wank v. St. Francis College*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000), *trans. denied.* Payment "shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee." I.C. § 22–2–5–1(a). If an employer fails to pay wages as required, it must pay liquidated damages up to double the amount of wages due plus

---

6. We express no opinion as to whether Tobin should have accepted the Offer of Judgment, nor do we express an opinion as to its impact, if any.

the employee's attorney fees. I.C. § 22–2–5–2.

A bonus may be a wage subject to the Wage Payment Act if it "directly relates to the time that an employee works, is paid with regularity, and is not dictated by the employer's financial success." *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737, 739 (Ind. 2004). To determine whether a bonus is within the coverage of the statute, we examine its substance. *Wank*, 740 N.E.2d at 912. Therefore, when a bonus is not "compensation for time worked," *Highhouse*, 807 N.E.2d at 740, it is not subject to the statute. *See Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1299–1300 (Ind.Ct. App.1994).

Here, the designated evidence shows that Ruman and RCH paid the $10,000 bonus to Tobin by crediting it to his equity ownership of the firm. In our view, it is of no moment that the money was accredited to him for a portion of his equity interest as opposed to given to him in the form of a "check," as contemplated by the statute. While this method of "payment" may not be within the strict statutory definition, it is apparent to us that the purpose of the Wage Payment Act is to punish employers who fail to compensate their employees in a timely manner. In this case, Ruman and RCH did, in fact, "compensate" Tobin because he received the full financial benefit of the $10,000, simply applying it to his equity share in RCH. Thus, even if *arguendo* the Wage Payment Act applies to the bonus, Ruman and RCH have not violated it because they did not fail to pay it to Tobin, and it would be anomalous for us to hold otherwise under these circumstances.

Because there was no violation of the Wage Payment Act, Tobin is ineligible for treble damages and attorney fees. Summary judgment is proper on this Count pursuant to a breach of contract theory, but because RCH and Ruman did not violate the Wage Payment Act, the trial court improperly calculated Tobin's damages. Under a breach of contract theory, it is apparent that Tobin is limited to damages in the amount of $15,000 plus interest.

### B. Count III

In Count III of his amended complaint, Tobin alleges that RCH failed to pay him his share of the firm's retained earnings. In his complaint, Tobin contends that this failure amounted to a breach of contract. In his summary judgment motion, Tobin argues in the alternative that the failure is either a breach of contract or a criminal conversion that is subject to treble damages and attorney fees pursuant to the crime victim's compensation statute. Tobin's share of the retained earnings is $5,301, and with added interest, totals approximately $9,200. The trial court granted Tobin's summary judgment motion, finding that RCH committed breach of contract, awarding Tobin $9,200, and conversion, awarding Tobin an additional $33,203.

Ruman and RCH contend that the trial court erred in granting Tobin's motion for summary judgment as to Count III because: (1) RCH's failure to pay Tobin his share of the firm's retained earnings constitutes failure to pay a debt, which is not within the coverage of the criminal conversion statute; and (2) Tobin's share of the retained earnings is not property within the context of the criminal conversion statute.[7] Ruman and RCH do

---

7. RCH also argues that Tobin should not recover on Count III because he did not assert a conversion claim or a claim under the crime victim's compensation statute in his amended complaint. But in Indiana, plaintiffs need not identify any specific theory of recovery;

not contest the $9,200 breach of contract award,[8] so we will focus exclusively on the conversion award.

■ A person commits criminal conversion when he "knowingly or intentionally exerts unauthorized control over property of another person." Ind.Code § 35-43-4-3. This statute does not apply to the failure to pay a debt. *Excel Indus., Inc. v. Signal Capital Corp.*, 574 N.E.2d 946, 948 (Ind.Ct.App.1991). Moreover, money may be the subject of a conversion action only if it is "a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind.Ct.App.1995).

■ A person who suffers pecuniary loss as a result of a violation of, inter alia, the criminal conversion statute, may bring a civil action against the person who caused the loss, recovering: (1) up to three times the actual damages; (2) the costs of the action; and (3) attorney fees. Ind. Code § 34-24-3-1. A criminal conviction for conversion is not necessary to recover under the crime victim's compensation statute, but the claimant must prove all elements of the alleged criminal act. *Gil-*

*liana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind.Ct.App.1999), *trans. denied.*

■ As to whether or not Ruman and RCH committed criminal conversion, they argue that any failure to pay Tobin his share of the retained earnings is, at most, the failure to pay a debt, which does not constitute criminal conversion as a matter of law. We agree. Tobin has not shown that he entrusted money to RCH for any particular purpose; to the contrary, the funds at issue are and always have been in the possession of and generated by RCH. RCH's wrongful withholding of these funds from Tobin is, at most, the failure to pay a debt, which does not constitute criminal conversion as a matter of law. *See Huff*, 654 N.E.2d at 836 (holding that wrongful withholding of money from commissions did not constitute criminal conversion where there was no evidence that the money was entrusted to the defendant for a particular purpose or that the defendant retained specific funds that could be directly attributed to plaintiff). Because summary judgment was inappropriate pursuant to the criminal conversion statute, the crime victim's compensation statute does not apply and we need not resolve those issues.[9]

rather, they must only state sufficient operative facts as to put defendants on notice as to their claims. *Binninger v. Hendricks County Bd. of Zoning Cmm'rs*, 668 N.E.2d 269, 272 (Ind.Ct.App.1996), *trans. denied*. Tobin stated sufficient operative facts in his amended complaint so as to put Ruman and RCH on notice as to his claims, and his failure to include a count specifying conversion and damages pursuant to the crime victim's compensation statute does not prevent him from recovering on Count III.

8. Indeed, RCH and Ruman made an Offer of Judgment to Tobin for $5,301, his share of the retained earnings. Appellant's Supp.App. p. 2-3. In their summary judgment motion they argue that he is not entitled to interest on this amount but do not revive this argument in their appeal. *Id.* We express no opinion as to

whether Tobin should have accepted the Offer of Judgment, nor do we express an opinion as to its impact, if any.

9. Inasmuch as we have found neither the Wage Payment Act nor the crime victim's compensation statute to apply, we need not reach the issue of whether a pro se plaintiff may recover statutory attorney fees. We note, however, the general rule prohibiting recovery of attorney fees for pro se parties. *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *Miller v. W. Lafayette Cmty. Sch. Corp.*, 665 N.E.2d 905 (Ind.1996). Tobin relies on *Ziobron v. Crawford*, 667 N.E.2d 202 (Ind.Ct.App.1996), *trans. denied*, which permitted recovery of attorney fees for a pro se defendant on a malicious prosecution counterclaim. But *Ziobron* distinguished its narrow holding from the general rule, noting

In sum, we conclude that summary judgment was proper on this Count based on RCH's breach of contract, but because it was improper on a criminal conversion theory and the crime victim's compensation statute does not apply, the trial court improperly calculated Tobin's damages. Under a breach of contract theory, the designated evidence demonstrates that Tobin sustained damages in the amount of $5,301 plus interest.

### IV. Remaining Motions

As a final matter, we note that both parties have filed motions with this court after briefing was completed. Tobin filed a Motion For Assessment of Damages For Frivolous and Bad Faith Cross–Appeal, and Ruman and RCH filed a Motion to Strike and a Motion for Leave to File Reply In Support of Motion to Strike.

■ In Tobin's motion, he seeks damages including attorney fees and expenses, contending that RCH's and Ruman's cross-appeal was frivolous and prosecuted in bad faith. While RCH and Ruman admittedly did not do a stellar job in writing their briefs, particularly the statement of facts section, nothing therein rises to the level of bad faith. Moreover, the cross-appeal was not frivolous inasmuch as we have found sufficient merit in it to grant it in part. We therefore deny Tobin's motion.

■ In RCH's and Ruman's motion, they argue that the portion of Tobin's Reply Brief that relates to a "Cross–Cross Appeal" should be stricken because no such "cross-cross appeal" is permitted by the Indiana Appellate Rules. In his "cross-cross appeal," Tobin argues that the

that *Kay* and *Miller* question "whether a pro se litigant/attorney could recover an award of attorneys fees under a fee shifting statute." 667 N.E.2d at 207. Tobin is the plaintiff in

trial court erred in computing his damages in the 2004 order by failing to properly calculate the interest due. Inasmuch as our holding today will require the trial court to recalculate the interest due on Counts II and III, the issue raised in Tobin's "cross-cross appeal" is moot and we deny the motion to strike and the motion to file a reply in support thereof.

### CONCLUSION

In light of the issues discussed above, we conclude that the trial court: (1) erred in granting summary judgment on Count VI because the oral employment contract does not fall within the Statute of Frauds; and (2) properly granted summary judgment on Count VII because Tobin's fraud claim fails as a matter of law. Therefore, Count VI may proceed to trial.

We also find that the trial court: (1) properly granted Tobin's summary judgment motion on Count II, but improperly based its Count II ruling on the Wage Payment Act, resulting in improperly calculated damages; and (2) properly granted Tobin's summary judgment motion on Count III, but improperly based its ruling in part on a criminal conversion theory because no such conduct occurred as a matter of law. Thus, an improper calculation of damages occurred with respect to this count as well. In sum, the trial court should have granted Tobin's summary judgment motion as to Counts II and III based on a breach of contract theory, finding that Tobin was damaged in the amount of $15,000 plus interest as to Count II, and in the amount of $5,301 plus interest as to Count III. As there appears to be a dispute with respect to the proper amount of interest that should be awarded, we re-

this lawsuit and does not have a claim for malicious prosecution. He would therefore not be entitled to attorney fees even if either fee shifting statute applied to this case.

mand to the trial court to determine the amount of interest that is due on Counts II and III.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

ROBB, J., concurs.

KIRSCH, C.J., concurs and dissents with opinion.

KIRSCH, Chief Judge, concurring in part and dissenting in part.

I fully concur in the decision of the majority as to all issues except for its holding that the alleged oral contract providing that the four one per cent equity owners would be equally compensated on an annual basis does not violate the Indiana State of Frauds. On such issue, I respectfully dissent.

Tobin alleges that there was an oral contract which provided that he would receive compensation equal to the other one per cent equity partners *on an annual basis*. Thus, the alleged provision calling for equal compensation was to remain in effect over a term of years. This provision speaks prospectively from that date of contracting and falls within the Statute of Frauds. Although the contract may have been terminated pursuant to the at-will employment provision at any time, the provision was to remain in effect until termination. Indeed, Tobin alleges that it applies to the entire twelve year period in which he was employed while an equity owner.

I would affirm the trial court's grant of summary judgment on this issue.