

FILED

Dec 28 2015, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Gregory F. Zoeller<br>Attorney General of Indiana | Bryan L. Cook<br>Indianapolis, Indiana |
| Kyle Hunter<br>Deputy Attorney General<br>Indianapolis, Indiana | |

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Expungement of J.S.: | December 28, 2015 |
| | Court of Appeals Case No.<br>16A04-1503-MI-89 |
| State of Indiana, et al.,<br>*Appellants,* | Appeal from the Decatur Superior Court |
| v. | The Honorable Matthew D. Bailey, Judge |
| J.S.,<br>*Appellee.* | Trial Court Cause No.<br>16D01-1402-MI-108 |

**Bradford, Judge.**

## Case Summary

[1] Effective July 1, 2013, the Indiana General Assembly (the "General Assembly") adopted a law allowing for the expungement of certain conviction records if the petitioning individual meets certain requirements. On February 27, 2014, Appellee J.S., who held a commercial driver's license ("CDL"), petitioned to have the records relating to his April 6, 2009 convictions for Class A misdemeanor operating a vehicle while intoxicated ("OWI") and Class A misdemeanor resisting law enforcement expunged. On July 7, 2014, the trial court issued an order granting J.S.'s petition. As part of this order, the trial court prohibited the Indiana Bureau of Motor Vehicles from disclosing J.S.'s 2009 OWI conviction to the Commercial Driver's License Information System ("CDLIS") as is required by existing federal and Indiana law.

[2] Appellants the State of Indiana, the Indiana Bureau of Motor Vehicles, and Kent W. Abernathy, in his position as Commissioner of the Indiana Bureau of Motor Vehicles (collectively, the "BMV"), now appeal the trial court's order prohibiting the BMV from disclosing J.S.'s conviction to the CDLIS. In challenging the trial court's July 7, 2014 order, the BMV argues that the portion of the trial court's ruling relating to the BMV is erroneous as it is inconsistent with the intent of the General Assembly. Specifically, the BMV argues that the ruling violates both existing federal and Indiana law and would lead to illogical and absurd results. Concluding that the BMV is not barred from challenging the trial court's order and that the trial court erred in prohibiting the BMV from disclosing J.S.'s conviction to the CDLIS, we reverse and remand to the trial court with instructions to amend its July 7, 2014 order to specifically allow the

BMV to comply with the existing federal and Indiana laws requiring the BMV to disclose J.S.'s conviction to the CDLIS.

# Facts and Procedural History[1]

On April 6, 2009, J.S. was convicted of Class A misdemeanor OWI and Class A misdemeanor resisting law enforcement. In 2013, J.S. was convicted of Class D felony OWI while having a prior OWI conviction. As a result of his 2013 conviction, J.S., who had held a CDL, received a lifetime prohibition from ever carrying a CDL.

Following the General Assembly's adoption of a law allowing for the expungement of certain conviction records, on February 27, 2014, J.S. petitioned to have the records relating to his April 6, 2009 convictions for Class A misdemeanor OWI and Class A misdemeanor resisting law enforcement expunged. At the time J.S. filed his petition, he had two pending post-conviction petitions challenging his 2009 convictions. J.S.'s petition indicated the prosecutor agreed to waive the requirement that J.S. not commit or be convicted of any crime within the five preceding years and that expungement of the 2009 convictions would resolve his pending petitions for post-conviction

---

[1] We held oral argument in the instant matter at Ben Davis High School on December 7, 2015. We wish to thank the students, faculty, and staff of Ben Davis for their hospitality. We also wish to commend counsel for the high quality of their arguments.

relief.[2] On July 7, 2014, the trial court granted J.S.'s petition and ordered that the records relating to J.S.'s 2009 convictions be expunged. In granting J.S.'s petition, the trial court also held that the BMV was prohibited from disclosing J.S.'s 2009 conviction for operating while intoxicated to the CDLIS.

On November 10, 2014, the BMV filed a Trial Rule 60(B) motion for relief from judgment. In this motion, the BMV argued that if it were to comply with the trial court's July 7, 2014 order, it would be violating existing federal and Indiana law. The trial court conducted a hearing on the BMV's motion on January 16, 2015. On February 2, 2015, the trial court issued an order in which it denied the BMV's motion. This appeal follows.

# Discussion and Decision

On appeal, we are faced with the question of whether the trial court erred in finding that the BMV was prohibited from reporting J.S.'s 2009 OWI conviction to the national CDLIS database following the expungement of said conviction.

---

[2] Although the version of the Expungement Statute in effect when J.S. filed his expungement petition does not appear to have expressly allowed the prosecutor to agree to time period of less than the proscribed five-year period during which the petitioning individual was not to have committed any additional crimes, the General Assembly has since amended the Statute to place such a decision within the prosecutor's discretion. Moreover, the State conceded during oral argument that it was within the prosecutor's discretion to agree to a period of less than five years.

# I. Standard of Review

In order to determine whether the trial court erred in finding that the BMV was prohibited from reporting J.S.'s 2009 conviction to the CDLIS, we must interpret the relevant federal and Indiana statutes.

> The interpretation of statutes is a pure question of law we review de novo, and we therefore need not defer to the trial court's interpretation. *Sanders v. Bd. of Comm'rs of Brown County*, 892 N.E.2d 1249, 1252 (Ind. Ct. App. 2008); *Johnson v. Morgan*, 871 N.E.2d 1050, 1052-53 (Ind. Ct. App. 2007). Our goal in construing a statute is to determine, give effect to, and implement the intent of our General Assembly. *Sanders*, 892 N.E.2d at 1252 (citing *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000)). We presume that the General Assembly intended that the language used in the statute be applied logically and not to bring about an unjust or absurd result. *Id.*
>
> To determine the intent of the legislature, we examine the statute as a whole and also read sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* (citing *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005)). The best evidence of legislative intent is the language of the statute itself. *U.S. Steel Corp. v. N. Ind. Pub. Serv. Co.*, 951 N.E.2d 542, 552 (Ind. Ct. App. 2011). Thus, we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* When the language in a statute is ambiguous or uncertain, we may look not only to the language, but also to the nature and subject matter of the act and the object to be accomplished thereby in ascertaining the legislative intent. *Johnson*, 871 N.E.2d at 1053. If, however, the statutory language is clear and unambiguous on its face, we will give such a statute its apparent and obvious meaning. *U.S. Steel*, 951 N.E.2d at 552.

*Alvey v. State*, 10 N.E.3d 1031, 1032-33 (Ind. Ct. App. 2014), *aff'd on reh'g*, 15 N.E.3d 72 (Ind. Ct. App. 2014).

# II.  Overview of Relevant Authority

## A.  Federal Law vs. State Law

[8]  "Under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land, and state law which conflicts with federal law is without effect."  *Gibson v. Hand*, 756 N.E.2d 544, 546 (Ind. Ct. App. 2001) (citing *Ziobron v. Crawford*, 667 N.E.2 202, 206 (Ind. Ct. App. 1996), *trans. denied*).  "'State law actually conflicts with federal law where it is impossible for a citizen to comply with both state and federal requirements or if state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id*. (quoting *Ziobron*, 667 N.E.2d at 206).

## B.  Federal Statutes Relating to CDLs

[9]  In order to promote safe travel, to lower the probability and severity of accidents involving commercial motor vehicles throughout the United States, and to ensure that persons responsible for driving commercial motor vehicles are qualified to operate said vehicles, the federal government passed the Motor Carrier Safety Improvement Act of 1999 ("MCSIA").  *See Ind. Bureau of Motor Vehicles v. Orange*, 889 N.E.2d 388, 390-91 (Ind. Ct. App. 2008).  To ensure that States would comply with the regulations of the MCSIA, the federal government conditioned the receipt of federal highway funding upon compliance with the MCSIA.  *See generally, id*. at 391 (providing that in order to

ensure federal support in highway funding, Indiana enacted Indiana Code section 9-24-6-2 which incorporated certain provisions of the MCSIA and required the BMV to adopt various rules to regulate individuals holding CDLs).

[10] Title 49 of the Code of Federal Regulations sets forth certain requirements relating to transportation with which States must comply. With regard to an individual who holds a CDL, 49 C.F.R. § 384.225(a) provides that the State *must*:

> Post and maintain as part of the CDLIS driver record:
>
> > (1) All convictions, disqualifications and other licensing actions for violations of any State or local law relating to motor vehicle traffic control (other than parking, vehicle weight, or vehicle defect violations) committed in any type of vehicle.
> >
> > (2) The following medical certification status information:
> >
> > (i) Driver self-certification for the type of driving operations provided in accordance with § 383.71(b)(1) of this chapter, and
> >
> > (ii) Information from medical certification recordkeeping in accordance with § 383.73(o) of this chapter.

Further,

> The State *must not* mask, defer imposition of judgment, or allow an individual to enter into a diversion program that would prevent a CLP or CDL holder's conviction for any violation, in any type of motor vehicle, of a State or local traffic control law

(other than parking, vehicle weight, or vehicle defect violations) from appearing on the CDLIS driver record, whether the driver was convicted for an offense committed in the State where the driver is licensed or another State.

49 C.F.R. § 384.226 (emphasis added).

Each State's CDL program is subject to review by the Federal Motor Carrier Safety Administration ("FMCSA"). 49 C.F.R. § 384.307. If the FMCSA finds that a State has failed to comply with the above-quoted sections, the State faces the loss of its Federal-aid highway funds. Specifically,

> (a) Following the first year of noncompliance. An amount up to 5 percent of the Federal-aid highway funds required to be apportioned to any State under each of sections 104(b)(1), (b)(3), and (b)(4) of title 23 U.S.C. *shall* be withheld from a State on the first day of the fiscal year following such State's first year of noncompliance under this part.
>
> (b) Following second and subsequent year(s) of noncompliance. An amount up to 10 percent of the Federal-aid highway funds required to be apportioned to any State under each of sections 104(b)(1), (b)(3), and (b)(4) of title 23 U.S.C. *shall* be withheld from a State on the first day of the fiscal year following such State's second or subsequent year(s) of noncompliance under this part.

49 C.F.R. § 384.401 (emphases added). In addition, the FMCSA could de-certify the State's CDL program or prohibit the State from performing any of the following CDL transactions: (1) initial issuance of a CDL license, (2) renewal of a CDL license, (3) transfer of a CDL license, or (4) upgrade of a

CDL license. 49 C.F.R. § 384.405. The Indiana General Assembly has specifically adopted 49 C.F.R. § 384 as Indiana law. Ind. Code § 9-24-6-2(d).

## C. Indiana's Expungement Law

[12] Effective July 1, 2013, the General Assembly adopted a law allowing for the expungement of certain criminal conviction records. *See generally*, Ind. Code ch. 35-38-9. With respect to an individual convicted of a misdemeanor, including a Class D felony that had been reduced to a misdemeanor, the version of this new law that was in effect when J.S. filed his expungement petition provided that:

> (b) Not earlier than five (5) years after the date of conviction (unless the prosecuting attorney consents in writing to an earlier period), the person convicted of the misdemeanor may petition the sentencing court to expunge conviction records contained in:
>
>> (1) a court's files;
>>
>> (2) the files of the department of correction;
>>
>> (3) the files of the bureau of motor vehicles; and
>>
>> (4) the files of any other person who provided treatment or services to the petitioning person under a court order;
>
> that relate to the person's misdemeanor conviction.
>
> (c) A person who files a petition to expunge conviction records shall pay the filing fees required for filing a civil action, and the clerk shall distribute the fees as in the case of a civil action. A person who files a petition to expunge conviction records may not receive a waiver or reduction of fees upon a showing of indigency.

(d) If the court finds by clear and convincing evidence that:

>> (1) the period required by this section has elapsed;

>> (2) no charges are pending against the person;

>> (3) the person does not have an existing or pending driver's license suspension;

>> (4) the person has successfully completed the person's sentence, including any term of supervised release, and satisfied all other obligations placed on the person as part of the sentence; and

>> (5) the person has not been convicted of a crime within the previous five (5) years;

> the court shall order the conviction records described in subsection (b) expunged in accordance with section 6 of this chapter.

Ind. Code § 35-38-9-2.

[13] Indiana Code section 35-38-9-6 further provided, in relevant part, that:

> (a) If the court orders conviction records expunged under sections 2 through 3 of this chapter, the court shall do the following with respect to the specific records expunged by the court:

>> (1) Order:

>>> (A) the department of correction;

>>> (B) the bureau of motor vehicles; and

>>> (C) each:

>>>> (i) law enforcement agency; and

> > (ii) other person;
>
> > who incarcerated, provided treatment for, or provided other services for the person under an order of the court;
>
> to prohibit the release of the person's records or information in the person's records to anyone without a court order, other than a law enforcement officer acting in the course of the officer's official duty.
>
> > (2) Order the central repository for criminal history information maintained by the state police department to seal the person's expunged conviction records. Records sealed under this subdivision may be disclosed only to:
>
> > > (A) a prosecuting attorney if:
>
> > > > (i) authorized by a court order; and
>
> > > > (ii) needed to carry out the official duties of the prosecuting attorney; and
>
> > > (B) the Federal Bureau of Investigation and the Department of Homeland Security, if disclosure is required to comply with an agreement relating to the sharing of criminal history information.
>
> > (3) Notify the clerk of the supreme court to seal any records in the clerk's possession that relate to the conviction.

[14] However, effective July 1, 2015, Indiana Code section 35-38-9-6(a)(2) was amended to read, in relevant part, as follows:

(a) If the court orders conviction records expunged under sections 2 through 3 of this chapter, the court shall do the following with respect to the specific records expunged by the court:

\*\*\*\*

(2) Order the central repository for criminal history information maintained by the state police department to seal the person's expunged conviction records. Records sealed under this subdivision may be disclosed only to:

(A) a prosecuting attorney, if:

(i) authorized by a court order; and

(ii) needed to carry out the official duties of the prosecuting attorney;

(B) a defense attorney, if:

(i) authorized by a court order; and

(ii) needed to carry out the professional duties of the defense attorney;

(C) a probation department, if:

(i) authorized by a court order; and

(ii) necessary to prepare a presentence report;

(D) the Federal Bureau of Investigation and the Department of Homeland Security, if disclosure is required to comply with an agreement relating to

the sharing of criminal history information;

(E) the:

> (i) supreme court;

> (ii) members of the state board of law examiners;

> (iii) executive director of the state board of law examiners; and

> (iv) employees of the state board of law examiners, in accordance with rules adopted by the state board of law examiners;

for the purpose of determining whether an applicant possesses the necessary good moral character for admission to the bar;

(F) a person required to access expunged records to comply with the Secure and Fair Enforcement for Mortgage Licensing Act (12 U.S.C. 5101 et seq.) or regulations adopted under the Secure and Fair Enforcement for Mortgage Licensing Act; and

(G) *the bureau of motor vehicles, the Federal Motor Carrier Administration, and the Commercial Drivers License Information System (CDLIS), if disclosure is required to comply with IC 9-24-6-2(d) relating to*

> *reporting a conviction for a violation of a*
> *traffic control law.*

(Emphasis Added).

# III. Analysis

The BMV contends that the trial court erred in finding that it was prohibited from reporting J.S.'s 2009 conviction for OWI to the CDLIS. Specifically, the BMV argues that the trial court's interpretation and application of Indiana Code section 35-38-9-6, as it applies to the BMV, is contrary to the General Assembly's intent. For his part, J.S. argues that Indiana Code section 35-38-9-6 was clear and unambiguous and the trial court's interpretation and application of said statute was not contrary to the intent of the General Assembly.

## A. Whether the Trial Court's Ruling is Consistent with the General Assembly's Intent

### 1. Conflict with Existing Federal and Indiana Law

The BMV first argues that the trial court's ruling should be found contrary to the General Assembly's intent because the trial court's interpretation of Indiana Code section 35-38-9-6 is in conflict with both federal and Indiana law. J.S. argues, to the contrary, that Indiana Code section 35-38-9-6 can be reconciled with the applicable federal regulations because said regulations do not explicitly mention expungement, an expunged conviction is not to be treated as a

conviction under federal law,[3] and the FMCSA indicates that there is no requirement that a vacated conviction be reported to the CDLIS. The BMV responds to J.S.'s argument by claiming that Indiana Code section 35-38-9-6 does not vacate an expunged conviction but rather provides that an expunged conviction should be removed from an individual's public criminal record and limits the circumstances under which it can be disclosed.

[17] In *Gibson*, we were confronted with the question of whether the trial court erred in granting the petitioner, who was employed as a truck driver, a restricted CDL during a period in which his operator's license was suspended because of a chemical test failure. 756 N.E.2d at 545. The State argued that the trial court's order was in conflict with 49 U.S.C.A. § 31311 which provided, in relevant part, that

> "(a) General. - To avoid having amounts withheld from apportionment under section 31314 of this title, a State shall comply with the following requirements:
>
> * * *
>
>> (10)(A) The State may not issue a commercial driver's license to an individual during a period in which the individual is disqualified from operating a commercial motor vehicle or the individual's driver's license is revoked, suspended, or canceled.

---

[3] In making this argument during oral argument, counsel for J.S. cited to a definition of the term "conviction" that is located in the chapter of the United States Code discussing the carrying, licensing, possession, and transportation of firearms. Counsel, however, provided no citation to a similar definition of the term "conviction" from the Code of Federal Regulations, which is the body of federal law at issue in the instant case.

(B) The State may not issue a special license or permit (including a provisional or temporary license) to an individual who holds a commercial driver's license that permits the individual to drive a commercial motor vehicle during a period in which-

> (i) the individual is disqualified from operating a commercial motor vehicle; or

> (ii) the individual's driver's license is revoked, suspended, or canceled.

* * *

(b) State satisfaction of requirements. - A State may satisfy the requirements of subsection (a) of this section that the State disqualify an individual from operating a commercial motor vehicle by revoking, suspending, or canceling the driver's license issued to the individual."

*Id*. at 547 (quoting 49 U.S.C.A. § 31311).

[18] In reviewing the trial court's ruling together with 49 U.S.C.A. § 31311, we concluded as follows:

> This federal statute subjects Indiana to a potential loss of federal funding if it does not comply with 49 U.S.C.A. § 31311. Clearly, the trial court's grant of Hand's Petition directly conflicts with 49 U.S.C.A. § 31311(a)(10), as it requires the BMV to issue Hand a restricted CDL during a period in which his operator's license was suspended due to a chemical test failure.

> Consequently, we find that the BMV has presented a prima facie case of error. Although Indiana law does not deny Hand the issuance of a restricted CDL, the BMV has established that

> Indiana will be subject to a loss of federal funds if it issues Hand a restricted CDL. Thus, it would be impossible to issue Hand a restricted CDL in compliance with the law of Indiana without conflicting and/or creating an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, i.e. 49 U.S.C.A. § 31311(a)(10). *See Ziobron*, 667 N.E.2d at 206. Therefore, we find that the trial court erred in granting Hand's Petition.

*Id*.

[19] The situation before us on appeal is similar to that presented in *Gibson*. 49 C.F.R. § 384.226 explicitly provides that the State must not mask, defer imposition of judgment, or allow an individual to enter into a diversion program *that would prevent a CDL holder's conviction for any violation, in any type of motor vehicle, from appearing on the individual's CDLIS driver record*. We believe that prohibiting the BMV from reporting the expunged conviction would violate 49 C.F.R. § 384.226 as it would force the BMV to prevent the conviction from appearing on J.S.'s CDLIS driver record. Considering both the plain language of the statutes in question and our prior opinion in *Gibson*, we conclude that the trial court's ruling that the BMV was prohibited by Indiana Code section 35-38-9-6 from reporting J.S.'s 2009 OWI conviction directly conflicts with 49 C.F.R. § 384.226. *See generally, id*. at 546 (providing that a state law actually conflicts with a federal law when it is impossible for a citizen or entity to comply with both the state and federal requirements).

[20] Because we conclude that Indiana Code section 35-38-9-6 conflicts with federal law, we further conclude that pursuant to the Supremacy Clause of the United

States Constitution, 49 C.F.R. § 384.226 controls over Indiana Code section 35-38-9-6. *See id.* Furthermore, it is also of note that because Indiana Code section 35-38-9-6 conflicts with 49 C.F.R. § 384.226, it also conflicts with Indiana Code section 9-24-6-2(d), which expressly adopted 49 C.F.R. § 384 as Indiana law.

### *2. Illogical or Absurd Results*

[21] The BMV also claims that the trial court's ruling, which again prohibits the BMV from complying with 49 C.F.R. § 384.226, will lead to illogical and absurd results as it places Indiana at risk of losing federal highway funding and could lead to the de-certification of Indiana's CDL program. J.S. claims that the State's arguments regarding the potential loss of federal funding or de-certification of Indiana's CDL program are "demagoguery" as the State failed to point to any instance where any other state has lost federal funding or has had its CDL program decertified for failing to report an expunged conviction. Appellee's Br. p. 10.

[22] Again, Indiana's CDL program is subject to review by the FMCSA. 49 C.F.R. § 384.307. If the FMCSA finds that Indiana has failed to comply with the provisions of 49 C.F.R. §§ 384.225 and 384.226, the FMCSA shall order that a portion of Indiana's Federal-aid highway funds be withheld. Specifically,

> (a) Following the first year of noncompliance. An amount up to 5 percent of the Federal-aid highway funds required to be apportioned to any State under each of sections 104(b)(1), (b)(3), and (b)(4) of title 23 U.S.C. *shall* be withheld from a State on the first day of the fiscal year following such State's first year of noncompliance under this part.

> (b) Following second and subsequent year(s) of noncompliance. An amount up to 10 percent of the Federal-aid highway funds required to be apportioned to any State under each of sections 104(b)(1), (b)(3), and (b)(4) of title 23 U.S.C. *shall* be withheld from a State on the first day of the fiscal year following such State's second or subsequent year(s) of noncompliance under this part.

49 C.F.R. § 384.401 (emphases added). For the 2015 fiscal year, Indiana's Federal-aid highway program apportionments for 23 U.S.C. §§ 104(b)(1), (b)(3), and (b)(4) equaled $653,038,989. *See* https://www.fhwa.dot.gov/legsregs/directives/notices/n4510788/n4510788_t1.cfm (last visited December 10, 2015). Thus, following the first year of noncompliance with the provisions of 49 C.F.R. §§ 384.225 and 384.226, Indiana could potentially lose over $32 million dollars of federal aid. That amount would grow to over $65 million dollars if Indiana were to fail to comply with the provisions of 49 C.F.R. §§ 384.225 and 384.226 for a second consecutive year. Despite J.S.'s claim that the BMV's argument in this regard is demagoguery because the BMV has not presented evidence that the FMCSA has ever ordered that a portion of a state's apportioned funds be withheld, we observe that federal law clearly provides the FMCSA with the power to order that said funds be withheld if Indiana were to fail to comply with the provisions of 49 C.F.R. §§ 384.225 and 384.226.

[23] In addition, if Indiana fails to comply with the provisions of 49 C.F.R. §§ 384.225 and 384.226, the FMCSA has the power to de-certify Indiana's CDL program or prohibit Indiana from performing any of the following CDL

transactions: (1) initial issuance of a CDL license, (2) renewal of a CDL license, (3) transfer of a CDL license, or (4) upgrade of a CDL license. 49 C.F.R. § 384.405. The BMV asserts that there are currently 171,811 individuals holding active CDLs in Indiana, including those holding CDL learner's permits. (Appellant's Br. 15) The BMV further asserts that decertification of Indiana's CDL program could have staggering effects, both within Indiana and nationwide, because decertification of Indiana's CDL program would prevent each of these individuals from obtaining or holding a CDL and companies in almost every sector of Indiana's economy rely on CDL drivers in some form or fashion. (Appellant's Br. 15) Again, despite J.S.'s claim that the BMV's argument in this regard is demagoguery because the State has not presented evidence that the FMCSA has ever decertified a state's CDL program, we observe that federal law clearly provides the FMCSA with the power to do so if Indiana were to fail to comply with the provisions of 49 C.F.R. §§ 384.225 and 384.226.

[24] Given the substantial statutorily proscribed potential negative economic implications, it would be illogical and absurd to find that the General Assembly intended to create a law that would put Indiana at risk of losing over $32 million in federal aid or having its CDL program de-certified.

### 3. Recent Amendment

[25] Effective July 1, 2015, presumably in response to the instant case and cases like it, the General Assembly amended Indiana Code section 35-38-9-6 to explicitly provide that records sealed by expungement may be disclosed to "the bureau of

motor vehicles, the [FMCSA], and the [CDLIS], if disclosure is required to comply with IC 9-24-6-2(d) relating to reporting a conviction for a violation of a traffic control law." Ind. Code § 35-38-9-6(a)(2). While the Indiana Supreme Court has held that inaction by the legislature can operate as implicit acceptance of the judicial interpretation of a law, *see Study v. State*, 24 N.E.3d 947, 957 (Ind. 2015), it seems reasonable that the opposite is also true, *i.e.*, that action by the legislature to amend a law can help clarify the legislature's original intent in adopting the law. Thus, it is reasonable to infer that the General Assembly's act of amending Indiana Code section 35-38-9-6 indicates that the General Assembly intended for the BMV to comply with these provisions all along.

[26] In sum, we cannot foresee a situation where the General Assembly would intend to (1) create a law that is in direct conflict with existing state and federal law, (2) put Indiana at risk of losing substantial sums of federal aid, or (3) risk the de-certification of Indiana's CDL program. Likewise, we believe that the recent amendment to Indiana Code section 35-38-9-2, which expressly allows the BMV to comply with the reporting requirements of 49 C.F.R. § 384.225 and Indiana Code section 9-24-6-2(d), indicates that the General Assembly has always intended for the BMV to comply with said laws.

[27] We conclude that the trial court's order prohibiting the BMV from doing so is contrary to the intent of the General Assembly. In addition, even if we were to conclude otherwise, pursuant to the Supremacy Clause of the United States Constitution, any application of Indiana Code section 35-38-9-6 which would

require noncompliance with the relevant federal authority would be without effect. *See Gibson*, 756 N.E.2d at 546. We therefore reverse the judgment of the trial court as it applies to the BMV and remand the matter to the trial court with the instruction to amend its July 7, 2014 order to specifically allow the BMV to comply with the existing federal and Indiana laws requiring the BMV to disclose J.S.'s 2009 OWI conviction to the CDLIS.[4]

[28] The judgment of the trial court is reversed and remanded with instruction.

Kirsch, J., and Altice, J., concur.

---

[4] We disagree with J.S.'s contention that the BMV's challenge to the trial court's July 7, 2014 order was barred by the doctrines of res judicata, intervention, waiver, or estoppel.