*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-0821

CHRISTOPHER CUMMINGS, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF MOTOR VEHICLES, RESPONDENT.

On Petition for Review of a Decision and Order of the District of Columbia
Department of Motor Vehicles
No. 2105569

(Argued March 7, 2023                                    Decided May 18, 2023)

*Chesseley A. Robinson* for petitioner.

*Stacey L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Caroline Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for respondent.

Before DEAHL and HOWARD, *Associate Judges*, and THOMPSON, *Senior Judge*.

THOMPSON, *Senior Judge*: Petitioner Christopher Cummings seeks review of a decision by the Director of the District of Columbia Department of Motor Vehicles (the "DMV") upholding a DMV notice that announced Mr. Cummings's lifetime

disqualification from holding a commercial driver's license ("CDL"). The DMV concedes in its brief that a remand is in order for the Director to modify Mr. Cummings's disqualification so that he is eligible for possible reinstatement after 10 years (as described in 18 D.C.M.R. § 1306.4(b)(1)-(3)).[1] But Mr. Cummings also challenges, on several grounds, the validity of his disqualification for *any* period of time based on his non-commercial-vehicle ("non-CMV") driving record and on a DMV regulation (18 D.C.M.R. § 1306) that he contends conflicts with the relevant statute (D.C. Code § 50-406).

We remand to the DMV for it to modify Mr. Cummings's disqualification to specify that he will be eligible to seek reinstatement of his CDL after 10 years. For the reasons discussed below, we otherwise affirm the Director's decision.

---

[1] The DMV's concession acknowledges the validity of Mr. Cummings's argument that one of the offenses cited in the disqualification notice "is not a violation upon which the Director could base a CDL disqualification." The concession reflects that only convictions "of any violation set forth in [18 D.C.M.R.] §§ 1306.1(a) through (g)" can support a disqualification under 18 D.C.M.R. § 1306.4; and, more specifically, that Mr. Cummings's 2016 conviction for "driving [a non-commercial vehicle] while license withdrawn" — one of three stated bases for the announced unconditional lifetime disqualification — is not a type of conviction that can support a § 1306.4 lifetime disqualification.

# I. Background

.

## A. The CDL Statute and Regulations

The Uniform Classification and Commercial Driver's License Act of 1990 ("UCCDLA"), D.C. Law 8-161, 37 D.C. Reg. 4665 (codified at D.C. Code §§ 50-401 to -409), was enacted by the Council of the District of Columbia (the "Council") "to bring the District into compliance with the federal Commercial Motor Vehicle Safety Act of 1986 [("CMVSA"), Pub. L. No. 99-570, 100 Stat. 3207, originally codified at 49 U.S.C. app. § 2701-2716 (1988); currently codified as amended at 49 U.S.C. §§ 31308-31317]." D.C. Council Comm. on Pub. Works, Report on Bill 8-505 at 1 (May 9, 1990). Congress had passed the CMVSA to promote uniformity among the States in various aspects of issuance, enforcement of violations, and information-sharing regarding CDLs, and in doing so permitted the Secretary of Transportation to withhold highway funds from States and the District for noncompliance with the "requirements for State participation" in the program of federal funding. 49 U.S.C. app. §§ 2708, 2710 (1988); *see* 49 U.S.C. § 31311(a). In turn, the Council enacted the UCCDLA to create a CDL program in the District and,

of particular importance here, directed the Mayor to "[c]omply with any . . . requirement mandated by section 12009 [49 U.S.C. app. § 2708 (1988)]" of the CMVSA (which set out, inter alia, mandated periods of disqualification from operating a commercial motor vehicle for persons found to have committed specified violations). D.C. Code § 50-402(8). As relevant to this appeal, the UCCDLA established a scheme for disqualification of licensees tracking the one found in the federal law. *Compare* D.C. Code § 50-406(a)-(c) *with* 49 U.S.C. app. §§ 2707(a)(1)-(2) and 2708(a)(15)-(16). The first sentence of § 50-406(a)(1), which has not been amended since its enactment in 1990, provides that the Mayor "shall disqualify" from the operation of a commercial motor vehicle any person who is found to have committed the offense of "[d]riving a *commercial motor vehicle* while under the influence of alcohol or a controlled substance" (emphasis added).

The federal law was amended in 1999 to require the Secretary of Transportation to issue amended regulations that would not only require disqualification of CDL holders who are convicted of alcohol- or drug-related offenses while driving commercial vehicles, but that would also require "disqualification . . . from operating a commercial motor vehicle of an individual who holds a [CDL] and who has been convicted of . . . a drug or alcohol related offense involving a motor vehicle (other than a commercial motor vehicle)." Motor

Carrier Safety Improvement Act of 1999 ("MCSIA"), Pub. L. No. 106-159, § 201(b)(2), 113 Stat. 1748; *see* 49 U.S.C. § 31310(g). The Secretary's implementing regulation, promulgated in 2002 (*see* 67 Fed. Reg. 49742 (July 31, 2002)), is found at 49 C.F.R. § 383.51(b).

In May 2005, the DMV issued a notice of proposed rulemaking to amend the District's CDL regulations to provide, inter alia, for disqualification from holding a CDL for drivers convicted of a drug- or alcohol-related offense involving *any* vehicle, an update "suggested by the Federal Motor Carrier Safety Administration ["FMCSA"] to establish conformity with federal law[.]" 52 D.C. Reg. 5084, 5088 (May 27, 2005). In August 2005, the DMV followed up with the adoption of emergency rules to make the same change (and some other changes) immediate, in advance of anticipated but not-yet-scheduled Council hearings. 52 D.C. Reg. 7831, 7832 (Aug. 12, 2005). The notice of emergency rulemaking explained that the DMV had received notice from the FMCSA that "rulemaking must be in place by September 30, 2005, to avoid 'sanctions,'" which the DMV "underst[ood] from discussions with FMCSA" to mean "the withholding of a portion of federal highway funds" for failure to comply with the requirements of the MCSIA. *Id.* at 7832. The notice stated that immediate rulemaking was required to protect the District's federal

highway funds "that are necessary to help ensure the safety of those who travel on the District's roads." *Id.*

The emergency rulemaking and corresponding final rulemaking promulgated on March 24, 2006, modified 18 D.C.M.R. § 1306.1(a)-(f) to require disqualification if an individual is convicted of one of the enumerated offenses while driving "any vehicle" rather than "a commercial vehicle." 52 D.C. Reg. at 7833; 53 D.C. Reg. 2206, 2207 (Mar. 24, 2006) (notice of final rulemaking). As noted in the notice of final rulemaking, "[o]n March 7, 2006, the Council, by passage of the Commercial Driver's License and International Registration Plan Enforcement Approval Resolution of 2006 (PR 16-613), approved the[] final rules" after a public hearing. 53 D.C. Reg. at 2207; *see* Commercial Driver's License and International Registration Plan Enforcement Approval Resolution of 2006, Proposed Res. 16-613, 53 D.C. Reg. 1959 (Mar. 7, 2006) (adopting Resolution 16-548); D.C. Council Comm. on Pub. Works & the Env't, Report on PR 16-613 at 1 (Feb. 22, 2006) ("The purpose of [the proposed Resolution] is to amend Title 18 of the District of Columbia Municipal Regulations to bring the District's commercial driver's license requirements into conformity with federal regulations . . . ."); 53 D.C. Reg. 629 (Feb. 3, 2006) (public hearing notice). The Council adopted the approval resolution (Resolution 16-548) after hearing testimony from the DMV Director that the "any

vehicle" change was "simply a replication of the federal CDL regulations" and was needed "to avoid the withholding of federal funds." Report on PR 16-613 at 3.

## B. Petitioner's CDL and Driving History and the DMV Notice of Disqualification

On March 27, 2021, the DMV sent Mr. Cummings an Official Disqualification Notice, stating that he was "disqualified from operating a commercial motor vehicle for LIFE" pursuant to 18 D.C.M.R. § 1306.4(c) because he had recently been "convicted of a third major traffic violation while driving a commercial vehicle."[2]  The Notice listed three convictions: driving under the influence (conviction date of March 4, 2021); operating while impaired (conviction date of May 5, 2016); and driving while license withdrawn (conviction date of April 14, 2016).

Mr. Cummings objected to the Disqualification Notice and demanded that it be rescinded, asserting inter alia, through counsel, that he had "never been convicted of driving a commercial motor vehicle while under the influence of alcohol" and had not "committed 2 or more serious traffic violations that involved the operation of a

---

[2] Mr. Cummings held a Maryland CDL from 2014 to 2019 while residing there and obtained a CDL in the District of Columbia in 2019.

commercial vehicle within a 3 year period." He contended that the Disqualification Notice therefore was issued in contravention of D.C. Code § 50-406, which he asserted prevailed over 18 D.C.M.R. § 1306, the regulation cited by the DMV in the Disqualification Notice. Mr. Cummings also asserted that a lifetime ban on his holding a CDL constituted cruel and unusual punishment under the Eighth Amendment, that he was deprived of any "meaningful pre-deprivation process," and that the disqualification was disproportionate to his conduct. He petitioned for review by this court after the DMV Director rejected his arguments. Before us, Mr. Cummings advances the same arguments and adds a few additional ones.

## II.     Analysis

### A. Whether the Disqualification Based on Mr. Cummings's Non-Commercial-Vehicle Driving Record Was in Contravention of Law

The DMV Director rejected Mr. Cummings's argument that the Notice of Disqualification premised on 18 D.C.M.R. § 1306 contravenes D.C. Code § 50-406. Section 50-406(a) provides that the Mayor "shall disqualify from the operation of a commercial motor vehicle any person who is found to have committed any of"

several listed offenses, including, as listed in subparagraph (1) "[d]riving a *commercial motor vehicle* while under the influence of alcohol or a controlled substance" (emphasis added). By contrast, the DMV regulation set out at 18 D.C.M.R. § 1306.1 states that "[t]he Director shall disqualify a person from operating a commercial vehicle . . . if the person . . . [i]s convicted of driving *any* vehicle while under the influence of alcohol or a controlled substance" (emphasis added).

In rejecting Mr. Cummings's objection to the disqualification, the DMV Director stated without further explanation "DMV does not agree with your argument of a conflict between the code and regulations." The DMV argues in its brief that this court owes deference to the agency's interpretation that there is no conflict between D.C. Code § 50-406 and 18 D.C.M.R. § 1306. It is well-established under our case law that we do "defer to an agency's interpretation of a statute it administers unless the interpretation is unreasonable or in contravention of the language or legislative history of the statute." *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 994 A.2d 375, 377 (D.C. 2010) (internal quotation marks and ellipsis omitted). However, in this case, the Director's cursory "DMV does not agree" response is not on its face the kind of reasoned decision-making to which we typically accord deference. In the next sentence, the Director immediately moved

on to a citation of the pertinent federal regulation (49 C.F.R. § 383.51(b)) and a reference to the supremacy of federal law, and never addressed why there is no conflict between § 50-406 and § 1306.1 or whether the disqualification scheme set out in § 1306 exceeds the DMV's authority under § 50-406. As we have observed, "our deference is contingent on the [agency] fully and clearly explaining what it does and why it does it." *Off. of the People's Couns. v. D.C. Pub. Serv. Comm'n*, 284 A.3d 1027, 1032 (D.C. 2022) (internal quotation marks and brackets omitted). We therefore proceed to a plenary review of whether there is the conflict Mr. Cummings asserts, recognizing that we are "the final authority on issues of statutory construction." *D.C. Pub. Schs. v. D.C. Dep't of Emp. Servs.*, 123 A.3d 947, 949 (D.C. 2015).

Mr. Cummings is correct that § 50-406(a) does not expressly require disqualification from holding a CDL where a licensee is convicted of driving a non-CMV under the influence. However, no language in § 50-406 or elsewhere in Title 50 prohibited DMV, as the agency charged with implementing the District's CDL program, from promulgating regulations that require CDL disqualification for offenses committed while driving a non-CMV. More specifically, and as pertinent here, the statute's "shall disqualify" mandate as to persons found to have committed the offense of driving a CMV while under the influence of alcohol or a controlled

substance is not a dictate that precluded the DMV from adopting regulations imposing the same disqualification on persons found to have committed an alcohol- or drug-related offense while driving a non-CMV.[3]

Moreover, the legislative history of the District's CDL statute shows that the Council was focused on the "various requirements for state participation and compliance with the [federal CMVSA]," Bill 8-505 § 2 (D.C. 1990), and on bringing the District into compliance with the federal legislation. Report on Bill 8-505 at 1. As described above, in enacting the UCCDLA, the Council directed the Mayor to "[c]omply with any . . . requirement mandated by section 12009" of the CMVSA, which sets out the requirements for disqualification. *See* D.C. Code § 50-402(8). This historical intent strongly favors the interpretation of § 50-406(a) discussed in the paragraph above: that it left the Mayor, through the DMV, free to adopt a more stringent disqualification scheme, at least where necessary to avoid the withholding of federal funds for non-compliance with the federal statute and regulations. We agree with the DMV that the Council's charge to the Mayor "naturally included the

---

[3] The FMCSA has articulated a similar interpretation of its authority under the MCSIA. It explained in a rulemaking notice that it has the authority to set identical penalties for CMV and non-CMV offenses, because "Congress simply said that penalties in a non-CMV may not be greater than the penalties for the same offense in a CMV." 67 Fed. Reg. at 49744.

authority to enact regulations that continue to maintain the District's compliance with federal law." If there were any doubt about that as a general matter, the doubt is resolved by the Council's adoption of Resolution 16-548, which specifically approved — prior to promulgation — the DMV rule change that "strengthen[ed] penalties by disqualifying CDL holders for committing specified offenses in *any* motor vehicle, as opposed to a commercial motor vehicle." Report on PR 16-613 at 3; Commercial Driver's License and International Registration Plan Enforcement Approval Resolution of 2006, Proposed Res. 16-613, 53 D.C. Reg. 1959.

Mr. Cummings would have us reach a contrary conclusion based on the fact that the Council "has had 20 years to amend its code" to effect the "any vehicle" change but has "chosen not to do so." To be sure, the Council might have amended the CDL statute, specifically § 50-406, to clarify that the sanction of disqualification applies upon conviction of offenses committed while driving a non-CMV. But we think it noteworthy that the Council "has on numerous occasions enacted legislation with provisions to be placed among the District of Columbia Municipal Regulations," a circumstance that led us to observe in another case that we should not apply "a categorical formal distinction" between statutory amendments enacted by the Council and placed in the D.C. Code, and regulations placed in the District of Columbia Municipal Regulations. *In re Prosecution of Settles*, 218 A.3d 235, 245

(D.C. 2019). Moreover, the Council has express authority to make "all such reasonable and usual police regulations . . . as the Council may deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia." D.C. Code § 1-303.03. Thus, the Council may take action in more than one way, and it seems appropriate to consider both the CDL statute and the Council's express pre-approval of the DMV's 2006 amendments to the CDL regulations as police-regulation vehicles *by the Council* (intended to "enhance safety," protect D.C. residents and its visitors from "improper use of commercial vehicles," Bill 8-505 § 2, and "help ensure the safety of those who travel on the District's roads," 52 D.C. Reg. at 7832). For these reasons, we conclude that the Council resolution pre-approving the DMV rulemaking that amended 18 D.C.M.R. § 1306.1 was a sufficient substitute for a corresponding amendment to § 50-406.

## B. Whether the Disqualification Is Invalid on the Other Grounds Asserted by Mr. Cummings

Mr. Cummings raises a number of other challenges to his CDL disqualification, which we address in turn. First, he asserts that the DMV lacked jurisdiction to disqualify him based on offenses committed in Maryland and

committed while Mr. Cummings was a Maryland resident. He further complains that it was improper for the DMV to base a disqualification on conduct that occurred before his CDL licensure in the District in 2019, and he asserts that it is possible that he was under the influence of a Maryland controlled substance other than alcohol that does not meet the District's definition of a controlled substance. Mr. Cummings did not raise these objections or even allude to them in his letter to the DMV objecting to the disqualification. We conclude that these arguments were forfeited, and we therefore do not consider them. *See D.C. Hous. Auth. v. D.C. Off. of Hum. Rts.*, 881 A.2d 600, 611 (D.C. 2005) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." (alteration omitted) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))).

Likewise forfeited is the argument, which Mr. Cummings has advanced for the first time in his reply brief, that his 2016 conviction, which the record indicates was based on 2014 DWI offense in Maryland, was "not a conviction for the purpose of any disqualification or disability" under Md. Code Ann., Crim. Proc. § 6-220(g) and is a "legal nullity," because the matter was discharged, in 2017, after Mr.

Cummings fulfilled conditions of probation. We generally will not consider arguments raised for the first time in a reply brief. *See Stockard v. Moss*, 706 A.2d 561, 566 (D.C. 1997). Even if the argument had been timely raised, it would likely have been unavailing. *See Motor Vehicle Admin. v. Jaigobin*, 991 A.2d 1251, 1256 n.6 (Md. 2010) ("Because the applicable definition of 'conviction' includes 'a judicial determination that an individual has violated . . . the law,' the holder of a CDL is subject to the 'disqualification' provision of the Maryland Commercial Driver's License Act even if he or she fulfills the conditions of probation and obtains a 'discharge' under § 6-220(g)."); *see also State v. J.S. (In re J.S.*), 48 N.E.3d 356, 365 (Ind. Ct. App. 2015) (giving effect, despite an Indiana expungement law, to 49 C.F.R. § 384.226, which explicitly provides that a State must not allow an individual to enter into a diversion program that would prevent a CDL holder's conviction from appearing on the individual's driver's CDL record).

Mr. Cummings also raises a number of claims relating to the documents contained in, or absent from, the material the DMV transmitted to this court as the administrative record. He contends that the "Full Driver's Record" that the DMV transmitted, which includes a February 2022 computer printout, contains material that was not available to the DMV at the time it issued the March 2021 disqualification notice. He contends further that this driving record is "incomplete

and unreliable" and contains an array of inaccuracies, duplicative entries, and discrepancies. He argues that the DMV was required to provide, but failed to provide, any certified or official records of his alleged convictions and no Maryland Vehicle Authority ("MVA") or Commercial Driver's License Information System ("CDLIS") records, leaving him without real-time access to "what he was accused of." He asserts that there is "no indication that any evidence exists that [he] was actually convicted" of driving under the influence of alcohol or a controlled substance.

We conclude that the record is sufficient to uphold the disqualification. The driving record identifies two separate offenses — one underlying a 2016 DWI conviction, and another underlying a 2021 DUI conviction — that were mentioned by (and thus known to) the DMV at the time it issued the disqualification notice, which thereby apprised Mr. Cummings of the basis for his disqualification. The DMV was not required to base the disqualification on certified or official court records or on MVA documents, because 18 D.C.M.R. § 1306.15(d) specifically provides that disqualification may be based on "[a] computer record obtained from or through an agency of the District or any other jurisdiction, if the agency has statutory or regulatory authority over commercial drivers or the records of

commercial drivers."[4]  The DMV is such an agency.  And as to Mr. Cummings's argument that no evidence exists that he actually had the cited convictions, his objection letter did not deny that he incurred the convictions, and his correspondence to the DMV and now his briefs provide corroboration.  *See* R. 3 n.1 (acknowledging a final adjudication by a Maryland district court in May 2021, relating to what the DMV had listed as a March 2021 DUI conviction); Petitioner's Br. at 4 (acknowledging Mr. Cumming's probation before judgment in 2021 to resolve a 2020 citation for DUI); Reply Br. at 4 (acknowledging Mr. Cumming's probation before judgment in 2016, corresponding to the DMV's citation of a 2016 OWI conviction).  "[T]he relevant inquiry is whether the [Director's] decision was supported by substantial evidence[.]" *Gary v. D.C. Dep't of Emp. Servs.*, 723 A.2d 1205, 1209 (D.C. 1998).  We are satisfied that it was.

Mr. Cummings's remaining arguments assert constitutional claims.  He asserts that his lifetime disqualification from holding a CDL constitutes cruel and unusual punishment under the Eighth Amendment.  Assuming arguendo that the disqualification sanction constitutes punishment rather than a civil remedial

---

[4] Further, because Mr. Cummings opted not to challenge the factual basis of his disqualification by denying the fact of the underlying convictions identified in the Disqualification Notice, he is not in a position to argue that the DMV should have produced more detailed documentation.

measure,[5] we are not persuaded that a lifetime disqualification conditionally subject to reinstatement after 10 years is grossly disproportionate to two alcohol-related driving offenses.[6] Mr. Cummings provides no authority for the proposition, merely asserting that because non-CDL drivers may commit more of the same offense while facing more lenient restrictions, his punishment is grossly disproportionate. In light of the significant safety threat posed by driving under the influence or while impaired and Mr. Cummings's eligibility for reinstatement under 18 D.C.M.R. § 1306.4(b) if he requests a review of his file, submits proof that he has completed an alcohol abuse program, and submits evidence that he has had a good driving history during his period of disqualification, we reject Mr. Cummings's Eighth Amendment claim.

Finally, Mr. Cummings argues that he was entitled to a pre-disqualification hearing "to determine whether the basis of [his lifetime disqualification was] valid." He similarly asserted in his written objection to the disqualification that the DMV's failure to provide a pre-deprivation hearing violated his right to due process. The

---

[5] *Cf. Hickerson v. United States*, 287 A.3d 237, 250 n.15 (D.C. 2023) (foreclosing an argument that sex offender registration is cruel and unusual punishment because "registration is not a punishment at all").

[6] We note that at least one other court has concluded that a lifetime CDL disqualification for alcohol-related offenses committed in non-commercial vehicles is not cruel and unusual punishment. *See Williams v. State*, 283 P.3d 127, 140 (Idaho 2012).

DMV does not question whether Mr. Cummings "has a property interest in the thing taken away," *Wall v. Babers*, 82 A.3d 794, 801 (D.C. 2014) (pertaining to a DMV decision declining to renew a non-commercial driver's license); thus, we assume that he does have a property interest in his CDL.

We begin our analysis of this issue by observing that the DMV's March 27, 2021, Disqualification Notice informed Mr. Cummings that his disqualification would be prospective, i.e., effective as of April 10, 2021. As the DMV highlights in its brief, Mr. Cummings did not file his written objections to the notice until October 7, 2021, over six months after the date of the notice. These facts show that he had, but did not avail himself of, a pre-deprivation opportunity to challenge the announced sanction. And, in any event, as in *Wall*, Mr. Cummings's claim that he was entitled to a pre-deprivation hearing is foreclosed by *Dixon v. Love*, 431 U.S. 105, 115 (1977); *Wall*, 82 A.3d at 802. In *Dixon*, the Supreme Court concluded that summary revocation without a pre-deprivation hearing was consistent with principles of due process because of the "public interests present under the circumstances" of the case, namely an interest in "keep[ing] off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others." *Dixon*, 433 U.S. at 115. That is precisely the interest the District's CDL regulations are designed to protect.

Further, it was incumbent upon Mr. Cummings in objecting to the disqualification to demonstrate the need for an evidentiary hearing. Mr. Cummings failed to do so. The only factual dispute he identified related to the precise 2021 disposition date of his 2020 offense, an immaterial matter which Mr. Cummings corrected and which the DMV does not dispute. As explained above, Mr. Cummings has effectively conceded that he incurred the two operative convictions; thus, "there were no contested facts that needed to be resolved at a . . . hearing." *Wall*, 82 A.3d at 803. We have "rejected the notion that due process requires empty process," such as a hearing where there are no contested facts that need to be resolved. *Osborne v. District of Columbia*, 169 A.3d 876, 885 (D.C. 2017). For all the foregoing reasons, we are satisfied that Mr. Cummings received adequate process.

\* \* \* \*

For the foregoing reasons, we affirm the DMV decision to impose a disqualification, but remand the matter to the DMV for it to modify the disqualification to specify that Mr. Cummings will be eligible for possible reinstatement of his CDL after ten years.

*So ordered.*